SAINT CROIX LUMBER CO. v. PENNINGTON.

1. PRACTICE: JUDGMENT ROLL: WHAT IS. The technical judgment roll in a cause consists of the summons, pleadings, verdict or decision, and judgment; and where a bill of exceptions, or case, has been settled, signed and filed with the clerk before entry of judgment, such bill or case becomes also a part of such judgment roll; and exceptions taken, settled, signed and filed after the entry of judgment, though not a part of the technical judgment roll become a part of the record, on appeal from the judgment, by operation of law.

2. SAME: JUDGE'S CERTIFICATE TO TRANSCRIPT. Neither the clerk nor the Judge can attach any papers to the judgment roll, so as to make them a part of the

Saint Croix Lumber Company v. Pennington.

record, except in the mode prescribed by the Statute; nor can the certificate of the Judge to the transcript have the effect of making any papers a part of the record beyond those which the Statute itself recognizes as such.

3. BILL OF EXCEPTIONS: SETTLEMENT: TIME OF. The practice on settlement of bill of exceptions or case fully stated. If not presented for settlement within the statutory limit, or such other time as may be allowed by the Court or Judge, no power exists in the Court or Judge to allow the bill or case.

4. INSTRUCTIONS TO JURY: EXCEPTIONS: TIME OF. *It seems* that exceptions to the charge of the Judge given of his own motion, must be taken *at the time,* so that the Judge may correct any inadvertence or mistake before the jury retires; but as to instructions asked by counsel, exceptions may be taken at any time before entry of final judgment.

5. OBJECTIONS: GROUNDS OF. *It seems* that a general objection, without disclosing the nature or grounds thereof and pointing out the specific question intended to be raised, is nugatory and wholly ineffectual in a court of errors.

6. JUDGE'S MINUTES: STENOGRAPHER'S NOTES. Neither the rulings of the Court in admitting or excluding evidence, the instructions to the jury, the Judge's minutes or stenographer's notes, depositions nor affidavits used in the court below, are a part of the record, unless made so by a proper bill of exceptions.

7. BILL OF EXCEPTIONS: CASE. The distinction between a "bill of exceptions" and a "statement of the case" pointed out, and the use of each indicated.

8. MOTION FOR NEW TRIAL: NEITHER CASE NOR BILL: EVIDENCE NOT BEFORE COURT: ERRORS NOT CONSIDERED. Where the transcript does not show that a motion for a new trial was made either upon a bill of exceptions or a statement of the case, this court will presume there was neither; and assignments of error as to the verdict will not be considered when the evidence is not before this court.

9. INSTRUCTIONS: IN ABSENCE OF EVIDENCE, ERROR NOT PRESUMED IN. The Judge is presumed to have instructed the jury according to the law of the case until the contrary appears; and in the absence of all the facts this court will not assert that there was error in the charge of the Judge below

10. JUDGE'S CERTIFICATE TO TRANSCRIPT: DEFICIENCIES IN RECORD NOT CURED BY. Under Rule 13 of the Supreme Court, the use of the words, "the foregoing papers," without naming them, is not sufficient; nor are deficiencies in the transcript itself cured by such certificate, so as to make a proper record where the provisions of the Code have not been complied with.

11. RULES OF COURT: APPLY TO ALL CASES: NO DISCRETION IN COURT AS TO CASE. While rules of court remain in force they must be applied to all cases which fall within them; there is no discretion as to a particular case, unless such discretion is authorized by the rules themselves.

12. SETTLEMENT OF BILL OF EXCEPTIONS: DATE OF SHOULD APPEAR. *It would seem* that the time of the settlement of a bill or case should affirmatively appear; and so with regard to the signing and filing of the Judge's certificate to the transcript.

Saint Croix Lumber Company v. Pennington.

*Appeal from the District Court of Yankton County.*

THE facts are stated in the opinion.

*Nelson J. Cramer,* for appellant.

*I. E. West* and *Bartlett Tripp,* for respondent.

SHANNON, C. J.—This appeal is from a judgment rendered on the 7th of February, 1881, dismissing the complaint on the merits, and giving to the defendant the costs of the action.

At the threshold the direct objection is made by respondent's counsel that there is no bill of exceptions or statement of the case as required by the Code; and that the transcript is a bundle of papers among which are those properly of record, to-wit: the summons, complaint, answer, verdict and judgment. It is contended that the last named papers constitute the judgment-roll proper, and that neither the clerk nor the Judge can attach any other papers thereto, except in the mode prescribed by the Statutes regulating Civil Procedure. It is furthermore denied that a certain certificate of the Judge appended to the transcript, can have the effect of making the papers therein enumerated a part of the record, beyond what the Statute itself recognizes as such. It is urged that such overplus of papers can only be made a part of the record by "a case or bill of exceptions properly settled with notice to the opposite attorney as provided by the Code of Civil Procedure."

These grave questions must be squarely met by this court; and their consideration necessarily involves not merely the 13th rule of the Supreme Court, but also the body of the laws regarding " A case or a bill of exceptions." We had thought that the provisions of the Code on this subject are sufficiently simple and clear, but in this we were mistaken.

In this court each of the justices must, of course, be governed by the record and by nothing else. Any previous knowledge of the case or the proceedings, personally obtained on a trial below, must give way before the record, which forms the sole standard

for review. The personal knowledge of a judge, or his recollection of what transpired at and during a trial, certainly forms no part of the record, and must in no way be taken into account. The legal record is the only knowledge of the case we can have, or which we can act upon. It is the sole basis of our revision. It is, therefore, entirely futile for counsel to appeal to any such personal knowledge or recollection of the trial judge for the purpose of curing or supplying any defect or omission in the record.

Under chapter 16 of the Code of Civil Procedure, there are two modes by which cases may be brought into the Supreme Court, to-wit: first, by appeal and second by writ of error. (Section 425.) By the organic law writs of error, *bills of exception*, and appeals shall be allowed, in all cases, from the final decisions of the district courts to the Supreme Court, under such regulations as may be prescribed by law. (Section 1869 Revised Statutes of U. S.) The allowance of *bills* of exception has, accordingly, been regulated by the Legislative Assembly in article VIII of chapter XII of said Code, under the head of " Exceptions." (The amendment to section 281 was not enacted until March 4, 1881.)

Now, what are " bills of exceptions " as contemplated by the organic law and by the Code ?' An exception of itself, signifies an objection to or a protest against any ruling or decision of the court upon a question of law. It must be taken and stated at the time of the ruling, unless where it is otherwise particularly prescribed, as in section 249.

A bill of exceptions is, therefore, a written statement of the exceptions duly taken by a party to the decisions or instructions of a judge in the trial of a cause, with so much of the facts, or other matter, as is necessary to explain the rulings. It must be settled, allowed and signed by the judge, in the manner, and upon the notice, and within the time, pointed out in the Statute. And the only purpose or office of such a bill is to bring *upon the record* points or rulings which without it could not appear.

This leads to the inquiry of what is a record ? At common law a record signified a *roll* of parchment upon which the proceedings and transactions of a court were entered or drawn up by its officers, and which was then deposited in its treasury *in perpe-*

*tuam rei memoriam.* Such rolls were termed the *records* of the court, and were of such high and super-eminent authority that their truth could not be called in question. In inferior courts, or courts not of record, the proceedings were not thus enrolled, and hence the distinction between the two classes of courts. In the United States, *paper* has universally supplied the place of parchment as the material for the record, and the roll form, as formerly employed, has, on that account, fallen into disuse; but in other respects the forms of the English records have, with some modifications, been generally adopted.

In this Territory, as elsewhere, the roll of parchment has given place to what is named "the judgment roll." It is provided by the Code that the party or his attorney may furnish a judgment roll; but if he does not, that then "the clerk, *immediately after entering the judgment, shall attach together* and file the following papers, which shall constitute the judgment roll." (Section 299.) Then follows, in the same section, a specific enumeration of the papers which shall be so filed and attached. Of course the constituent elements of this roll are, and must be, the summons, pleadings, verdict, and judgment, as a perpetual memorial and testimony of the litigation and of the rights of the parties. Therefore, JUSTICE MOODY in a recent case has well said, that "the record proper, in an action tried upon issues of fact, consists of the summons; the pleadings; the verdict, if tried to a jury; the decision, if tried to the Court; and the judgment." (*Golden Terra Co. v. Smith;* see also *Gress v. Evans et al,* 1 Dak. Rep., 395.) This roll is, consequently, the record—the technical *record,* and is the only strict and proper proof of the proceedings and determinations of our District Courts. If, however, before the entry of judgment a bill of exceptions or case has been lawfully settled, signed and filed with the clerk, the latter must also attach such papers to the roll in their proper order, and they become part of the judgment roll without further action by the court or party.

The purpose of a bill of exceptions, as has been stated, is to put the points decided upon the record, so as to bring them for review before a superior court. As formerly, so now it must be "truly made;" for unless it be so, the Judge is not bound to set his hand

to it. That is, in the language of our Statute, "the bill must be conformable to the truth, or be at the time corrected until it be so." This means it must be settled by the Judge in the presence of the parties or after the proper notice to the adverse party. It is the duty of the Judge to see that the bill shall conform to the truth; for nothing false or erroneous should go into the record to prejudice the rights of the parties. The object in settling a bill is, therefore, to arrive at accuracy, and this as well in justice toward the court that tried the cause as to the suitors.

When the bill is thus settled, it must be signed by the judge; and this is required in confirmation of its accuracy. The next requisite is that it must be filed with the clerk. With regard to a bill duly settled, signed and filed, after the entry of judgment and within the time limited by law, there seems to be no express provision making it a part of the judgment roll; for the Code (sec. 299), appears to contemplate only such bill as is in the clerk's hands before, at, or immediately after, the entry of judgment. Such bill, however, becomes a part of the record, on appeal from the judgment, by operation of law.

When evidence is in any way involved, the bill must set forth only so much of it as is necessary, together with the direction prayed for, or objection, and the determination of the court. For in the words of the Code "the objection must be stated, with so much of the evidence, or other matter necessary to explain it, *and no more.*" Again, "when the exception is to the verdict, or decision, upon the grounds of the insufficiency of the evidence to sustain it, the objection must specify the particulars in which such evidence is alleged to be insufficient."

As to the *time* of presenting the bill,—it may be presented to the judge at the time any ruling is made, or the exception may be entered on the judge's minutes, and afterwards settled. The latter is the course most usually pursued; for the former mode occasions protracted interruptions of a trial, and consumes much valuable time. In practice, therefore, the substance of the exception is merely noted at the time it is taken; and the bill is afterwards settled, drawn up in form, and tendered to the judge for his signature. But in either event, the Code requires the presentation

of the bill; and when it is not presented at the time of the ruling, it " may upon three " (now *five*) " days' notice to the adverse party, at any time after such ruling is made, and within ten " (now *thirty*) " days after the entry of judgment, or such other time as may be fixed by the *court*," (now, or judge thereof),—" be presented to the judge and settled." It follows that notice to the adverse party is essential; and that in his absence no settlement can be made, unless upon due proof of the requisite notice. And the settlement must be within the prescribed period, unless an extension of time be granted and *fixed* by the court or judge. In other words, the bill must be presented and settled within the statutory limit of time, or at such other time as may have been so fixed; otherwise there is no power or authority to allow the bill. (See *Muller et al v. Ehlers*, 1 Otto, 250; *Bryan v. Maume*, 28 Cal., 241; *Kavanagh v. Maus*, 28 Cal., 263).

The bill must also relate to rulings had during the progress of the trial and " up to the time of the entry of judgment." (Section 281.) Decisions after judgment are specially provided for by section 282.

We have observed that an exception must be taken at the time the ruling is made; to this doctrine, however, there is an exceptions to be found in subdivision 3, of section 249, to-wit: " Exceptions to the giving or refusing any *instruction*, or to its modification or change, may be *taken* at any time *before the entry of final judgment* in the case.

As to this section, and section 248, it may be remarked that they are anomalies in our system of practice. They were not reported by the codifiers; but were mostly taken from the Practice Act of Illinois. (See Rev. Statutes of Ill., of 1874, page 781.) Nothing like them can be found in our old codes, or in those of New York and California. By the organic law, (section 1868 of Rev. Stats. of U. S.), our District Courts are declared to have common law jurisdiction; and are not the powers of the judge, as defined by the common law, largely trenched upon by these sections? On this point, see *Nudd et al v. Burrows*, 1 Otto, 426; *Houston v. Williams*, 13 Cal., 24. However this may be, and taking the two sections as they stand, the instructions referred to are of

two classes; first, those given by the judge, of his own motion; secondly, those specifically asked for by counsel. It would appear, therefore, that exceptions to the former must be taken at the time, so that the attention of the court being drawn to the points, the judge may have an opportunity to correct, if necessary, any inadvertence or mistake before the jury retires. As to the latter, the same reason does not apply, for attention is beforehand called by the specific requests, and a reasonable opportunity for answering them is afforded. It does not, consequently, appear unreasonable that so far as the responses of the judge to such requests are concerned, exceptions may be taken at any time before the entry of final judgment.

Having stated so much with regard to the time when the exception must be made, let us inquire in what manner it should be made. This is disclosed, generally, in section 279. In *Camden v. Doremus*, 3 How., U. S. 530, it was held, for instance, that a naked statement on the transcript that the reading of a deposition, or copy of a record, was objected to, without disclosing the nature or ground of the objection, is nugatory and wholly ineffectual in a court of error. The objection should point to some definite or specific defect in the character of the offer, as to form or substance. Under the mask of such general objection, or mere hinted objection, a party should not be permitted in an appellate court, to spring upon his adversary defects which it did not appear he ever relied upon, and which, if they had been openly and specifically alleged, might have been easily cured. The objection must be stated, says the Code, by which it is required that the objection must be specific, and must present the very point intended to be raised. The office of an exception is to point out some specific error in law, and the counsel should, by his exception, lay his finger upon the precise point, or upon the precise request refused or error in the charge. (*Ayrault v. the Pacific Bank*, 47.N. Y., 576.)

It must necessarily follow that neither the rulings of the court in the progress of the trial in admitting or excluding evidence nor the instructions to the jury, are a part of the record, unless made so by a proper bill of exceptions. (*Golden Terra Mining Co. v. Smith, supra.*) And this is equally so with regard to the judge's

minutes or notes, or any of his opinions filed. The judge's or stenographer's notes are but memoranda from which a formal bill may afterwards be drawn up and signed. When *exceptions are taken* entries of the fact are frequently made by the clerk in the minutes of the case, or by the presiding judge in his own notes, or they are made by the stenographer as *evidence of the fact* and as a *means of preserving* the rights of the party in case the verdict should be against him and he should desire to have the case re-examined in the appellate tribunal. But it was never supposed that such entries could be of any benefit to the party unless he seasonably availed himself of the right to reduce the same to writing and took proper measures to have a bill of exceptions presented to and settled and authenticated by the judge presiding at the trial. In other words, all such entries in the minutes of the clerk or judge or otherwise can only be regarded as evidence of the right of the party seasonably to demand a bill of exceptions. *Haraszthy v. Horton,* 46 Cal., 545; *Thorne v. Hammond,* 46 Cal., 530; *St. A. Mill Co. v. Vandall,* 1 Minn., 250. And so it is, that neither depositions nor affidavits, though appearing in the transcript, can ever be regarded as a part of the record until they are embodied in a bill. Sometimes all the minutes and files of the the court are spoken of as *records,* but this use of the word tends to a confusion of ideas and leads to serious mistakes. (*Balt. & Pot. R. R. Co. v. Trustees,* 1 Otto, 130.) The papers mentioned in section 299 (and they alone) form the record up to the time of entering the judgment and inclusive thereof. The Legislature has so declared, and we can no more add to their will than we can take from it. It is a copy of *the judgment roll* that must, in all cases, be certified to this court, together with a certified copy of the notice of appeal; or if the appeal be from an order or any part thereof, a certified copy of such order and the papers upon which the order was granted. (Section 408.) The clerk cannot, by his sole action or certificate, make that a matter of record which legally is not such, nor can he and the appellant combined produce a different result. And in this regard, the power of the judge himself is restricted, and is limited to the mode prescribed by the legislative will. The cases of *Stanton et al v. Embrey* and *Hunnicut v. Peyton,* 3 Otto 548 and 12 Otto, 333, relate to the con-

struction of and practice under mere rules of court in the absence of statutory laws.

It has been seen that the Organic law provides for "bills of exception," and that they must be allowed under such regulations as may be prescribed by law. But it is silent as to what is termed "a case" or "a statement of the case." These technical words appear in our Code, but not in Article VIII, which we have been examining. They are only to be found in sections 287 and 299, under the head of "New Trials" and as to the contents of a "judgment roll." When application for a new trial is made upon the grounds of excessive damages, or insufficiency of the evidence to justify the verdict, etc., or for error in law occurring at the trial, the moving party may proceed either upon a bill of exceptions, or "a statement of the case," or upon the minutes of the court.

The question at once arises, what is meant by "a statement of the case," and what advantage is to be gained from its use, beyond what is acquired by a bill of exceptions? The latter, as we have noticed, only exhibits so much of the evidence as is necessary to enable the Court to say whether error of law has been committed during the trial, in the particular rulings made by the Court. Hence the seventh cause for new trial, enumerated in section 286, may be reached by a bill. But there are two objections relating exclusively to a verdict, and frequently important, which, therefore, cannot be raised upon a bill of exceptions: one is, that the damages found are excessive; the other, that the verdict is not justified by the evidence. The examination of these requires a presentation of all the evidence in any way touching upon these points; and to make this showing, is the office of a case. A bill sets forth particular rulings, objected to as erroneous, with the evidence, or offer, on which they were made. But a case shows, in substance, the whole evidence, enabling the court to review the findings of the jury, as well as the rulings of the Judge.

In New York it is common to combine both documents in one, and there a case is made upon leave granted at the trial, with a privilege of turning it into a bill of exceptions. It shows the evidence and rulings complete, and is first used as a case as a basis of a motion to set aside the verdict, and afterwards is treated as a

bill when the rulings of law come to be argued upon an appeal.

We find, moreover, that section 299 of our Code provides for a *case* as well as a bill, and each, governed by similar rules, is, therefore, entitled to become a part of the judgment roll. The one is about equivalent to the other, though bearing different names. But there is this difference to be observed. The Supreme Court of the United States has held that the statement intended for a motion for a new trial cannot be used on *appeal from the judgment,* or considered, unless it is so stipulated. (*Kerr v. Clampitt,* 5 Otto, 190.) And this was a case from a territory and involving its system of Civil Procedure, which is akin to that of Dakota. (See also *Thompson v. Patterson,* 54 Cal., 546.) When an appeal has been taken from an order refusing a new trial, errors of fact or of law, reviewable on such appeal, are such as appear in a bill of exceptions, or statement of the case, settled in the court below, for in no other way can the *minutes* of that court be brought here. (Section 287.) And as there can be no appeal until a final decision in the action has been rendered, the practice should be, if so desired, to appeal both from the judgment and from such order. For the causes specified in the fifth, sixth, and seventh subdivisions of section 286, (in relation to new trials,) the application must be made in one of the three modes pointed out in section 287.

Having stated what constitutes the "record proper," or technical record, we reach the conclusion that "all other proceedings, including the evidence, must be brought into the record, if at all, by bill of exceptions or *statement of the case,* settled and signed by the Judge who tried the action, or settled by this court or pointed out in the Code." (JUSTICE MOODY, in *Golden Terra Co. v. Smith, supra.*) And in the light of all the above principles ascertained from the Code itself, we shall now proceed to examine the case before us.

The appeal is from the judgment only, which was entered February 7th, 1881, and we have the judgment roll proper. The transcript shows that on the second day after the verdict, there was an application to vacate it and for a new trial, to which motion were appended ten allegations of error in the mere language of the counsel. It does not appear that such application was made either upon a bill or a statement, and we are to presume there was

neither. If upon the minutes, how are they before us? Four of the allegations relate to the verdict and as to the evidence to support it; but we have none of the evidence; we have not been even afforded a narration of what occurred at the trial.

The remaining allegations refer to the instructions of the court to the jury; but as the judge is presumed to have instructed according to the law of the case, until the contrary appear, how, in the absence of all the facts in the case, can this court assert that there was such error? On the 5th of February, 1881, the motion was denied, and the judge noted an exception in these words, to-wit: "To which ruling the plaintiff, by its attorney, duly excepts." But this entry, as we have seen, did not amount to anything more than a memorandum, evidencing the fact, from which a bill or statement might afterwards be drawn. And so with regard to the instructions asked by the plaintiff; for as to these when refused, exceptions were likewise merely noted. In practice, *minutes* are memoranda of what takes place in court, made by the judge, or by his authority; and from these the record is afterwards made up; they are, therefore, not considered as any part of the record. When a motion for a new trial is made on the minutes and refused, the party desiring to appeal should take care to have a case or bill regularly made. If he does not, as in the present instance, the omission is his own fault, for which this court has no authority to provide a remedy. The way into this court has been made so facile by the Legislature,—so plain and easy in fact,—that the wayfaring appellant, unless a novice, need not err therein; and, therefore, we must insist that there shall be no deviations from the road legally marked out.

In the transcript there is also what purports to be the charge of the court to the jury. But this is no part of the record, unless incorporated therein by the prescribed methods. There is nothing in sections 248 and 249 which even requires the *filing* of the charge. In civil cases the stenographer's copy is not required to be filed; but either party can have it delivered to himself on payment of the fees; and the party can not procure it to be filed, without the proper authentication. Such copies are not official until examined by the judge and made so. After the charge, is

found a rather voluminous paper, entitled "plaintiff's exceptions to the charge." This is not signed by any one, bears no date, and is not marked as ever having been filed in the court below. There is not in the transcript a note or memorandum of the judge to indicate that these exceptions were seasonably made, or that his attention at any time was ever called to them. They are not identified in any certificate ; and they cannot, therefore, find any place upon the record.

Consequently, if the charge itself were properly before us, it would stand as though unobjected to, all these alleged exceptions being nugatory. Furthermore, if the charge were in the record, then a statement showing the facts, would be necessary to show error in it, or in the giving or refusing of instructions. As the charge, under the circumstances, is not serviceable, we are prevented from comparing it with the pleadings to ascertain from them whether there is anything in it necessarily erroneous. In the case of *Reed v. Gardner*, 17 Wall., 409, no statement of the evidence or of the facts upon which the questions arose, was before the court. But the bill of exceptions *did contain* the charge of the judge, and the requests and refusals to charge. In addition, there was, *in the transcript,* a number of papers and documents which *appeared to have been used in the trial of the case.* That case very much resembles the present one ; and the argument of counsel there was "that it could not be doubted that such evidence as was contained in the depositions, exhibits, certificates, &c., had been, in fact, given and that the *charge* of the judge *was based upon it.*" And the counsel further suggested that if the court should think that the evidence was not put into the record in proper form, then, that, as in *Tweed v. Flanders,* the judgment should be reversed and the cause remanded for a new trial. But the Supreme Court could not coincide with the views of counsel, and affirmed the judgment,—saying, among other pertinent things, that "it is impossible upon a record such as this is, that we should know whether the charge is correct or erroneous, or whether the refusals to charge as requested were justified, or whether they were improper."

Sundry other papers purporting to be *copies* of the pleadings, of the stipulation of the defendant for verdict and judgment, and of the verdict and judgment in the previous action, are embraced in

the transcript or roll of papers sent up; but all these are objected to as being foreign to the judgment roll. (See respondent's brief). It is sufficient to say that these papers are not, in any way, identified, or even mentioned in the judge's certificate. The use of the words, " the foregoing papers," in the certificate, is not sufficient, without *naming them.* (Rule 13). These papers are not so named, although others are; and the expression of these excludes the former. If they are true copies of papers really given in evidence, this fact should have been settled and authenticated by the sole authority competent to do so, namely, the judge.    It will not do to say, as was urged by counsel in the case just quoted, that it extrinsically appears they were used on the trial, or that it can not be doubted that such evidence as is contained in these alleged copies, had been, in fact, given; they must be incorporated into the record in the legitimate way.    The printed abstract does not correspond, as it should, with the facts of the transcript.    Among other inaccuracies observable in it, is a prominent one to be found at the foot of the fourth page, to-wit: " Case.    Record of the former action given in evidence." After repeated scrutiny, we are unable to find any such words in the transcript.    The least we can say is, that this unauthorized statement (no matter what the intention), is well calculated to mislead, and should destroy the value of the abstract.    Under Rule 17, the printed abstracts must be made reliable by conforming to the facts of the record.    And the form outlined in the rule serves to indicate the manner and form requisite in the preparation and settlement of the *case* itself.

There are other papers in the bundle or transcript which, if they answer any purpose, tend but to show that a bill or case was not settled, else they would have been thrown out of the record as entirely superfluous.    We refer to the bill of costs and stipulation as to its taxation, defendants demand for a copy of plaintiff's account and stipulation as to it, the defendant's requests refused, etc.

Nor can it be said that the other objections to the transcript are cured by the certificate affixed to it, so as to make it a proper record.    This certificate was evidently an attempt to comply with the 13th rule of this court and must be governed by it, for as to such certificate the Code is silent.    Superior courts of record

have an inherent power, independently of any Statute, to make rules for the transaction of their business, which rules they may from time to time change, alter or rescind. While they are in force, they must be applied to all cases which fall within them. There is no discretion as to a particular case, unless such discretion is authorized by the rules themselves. So long as a rule of court remains unrepealed it can not be dispensed with to favor any particular suitor. (*Thompson v. Hatch*, 3 Pick., 512.) But of course the rules must be reasonable, and can not contravene the Constitution or law of the land. (*Life Ins. Co. v. Francisco*, 17, Wall., 679; *Harres v. Corwin*, 35 Pa., St. Rep., 416; 34 Missouri, 474; 6 Cal., 636; 27 Ind., 388.) Accordingly, when, on the 2nd of January, 1879, this court established its rules, it was expressly ordered that they "*shall govern* the practice in all actions and proceedings hereafter to be brought into this court, as *supplemental* to the various provisions of *the Revised Codes*, relating thereto." They were not intended to subtract from or to diminish the requirements of the Code, but were *added* to them to supply what was wanted to perfect the practice.

Rule 13 is, therefore, additional and precautionary, and for the better security of the record. It aims at exactness, so that the bill or case may precisely conform to the truth, by naming each paper that enters into the judgment-roll. It is intended to protect the rights of parties and to prevent any possibility of wrong. But it was never imagined that it could be construed into a substitute for anything expressly demanded by the statute, or that it could supersede the preparing, presenting, settling and signing of an ordinary bill or case. The mere fastening together of papers, without the usual heading and narrative of the occurrences of the trial,—is in no true sense a *statement* of a case or a bill of exceptions. Such is the nature of the transcript before us; and the appellant can find no shelter under the improvident certificates. In fine, every requirement of the Code must be *first* fulfilled, before Rule 13 can be called into operation, or can have any effect. It is only an additional safeguard or precaution; and this is what is meant by the use of the word "supplemental." The idea of the rule was, no doubt, formed from section 483 of the Code of Crim-

inal Procedure, which requires a certificate similar in character, in addition to the return of the Record *proper* and the bill of exceptions. (Code of Crim. Proc., sections 446 and 482.)

In conclusion, we cannot omit the singular fact, that the judge's certificate, as presented here, bears no date either of signature or filing. The nearest we can approach to it, is, that it was signed sometime between the date of the judgment and of the clerk's certificate—the 24th of March, 1881. But by the law in force at the time of the judgment (February 7th) a bill or case was required to be settled and signed within ten days after the entry of judgment, or at some other fixed time. As there is nothing to show that the latter right was kept alive by any suitable application, order or stipulation,—the limitation would have expired by the 18th of February. From all that was said in the Gold Street case [N. W. Reporter, Dec. 6, 1879], it would seem that the time of the settlement of any bill or case should affirmatively appear, and not be left to any presumption. And so with regard to the signing and filing of the additional certificate. It is true that section 281 was amended by the act of March 4, 1881, by which the time was extended to "within thirty days after the entry of judg- "ment, or such other times as may be fixed by the court or judge." Still, if the amendment were retroactive, the limitation would have ended on the 9th of March; and the views above suggested would have remained unaltered. But it is questionable whether an act apparently to take effect in *futuro*, and having relation to entries of judgments,—such as the amendment before us,—can possess any retroactive qualities.

It follows from all that has been stated, that this court must adhere to the practice established by the Code and the Rules; and the judgment-roll proper being the only matter before us, there is nothing whatever in the present case for the court to pass upon.

The judgment must be

AFFIRMED.

All the justices concurring,—except MOODY J., who did not sit in the case.