### FARGO *et al.* v. PALMER *et al.*

1. APPEAL FROM JUDGMENT—WHAT REVIEWED ON.

An appeal from the judgment brings to this court the judgment roll proper for review; and the court can look at nothing not contained in and made a part of the judgment roll by the court below. The appellate court has no power to receive and is strictly prohibited from examining into or listening to any matters or things *de hors* the record.

2. SAME.

What purports to have been the evidence, attached to the record, not having been made a part of the record by the court below, will not be considered by this considered by this court; and no error appearing in the judgment roll proper the judgment below is affirmed.

Filed October 4, 1886.

Appeal from the district court of Grand Forks county.

*Bosard & Clifford*, for defendants and appellants.

*Noyes & Noyes*, for respondents.

No briefs on file.

TRIPP, C. J.   This is an action brought by the plaintiffs, under the firm name of C. H. Fargo & Co., to recover of the defendants for goods sold and delivered. The defendants are W. O. Palmer, C. K. Elliott and Andreas Palmer, sued jointly as the firm of Palmer & Elliott. W. O. Palmer, C. K. Elliott and Andreas Palmer answered jointly and alleged that Andreas Palmer was not a partner of Palmer & Elliott—that the partnership was composed of W. O. Parmer and C. K. Elliott only—that they alone composed the firm of Palmer & Elliott, and admitted and alleged that as such firm, they purchased the goods in question and were indebted to the plaintiffs in the amount alleged in the complaint. And the defendant Andreas Palmer answered separately and denied generally and specifically that he was, or had ever been a partner in the firm of Palmer & Elliott; so that the sole issue of fact was, whether at the time of the sale of the goods, Andreas Palmer was a partner in the firm of Palmer & Elliott.

This issue of fact was tried to the court, a jury being waived, and the court found Andreas Palmer to have been a partner and as such liable with the other defendants, for the

amount claimed in the complaint; and upon such findings and conclusions of the court, judgment was duly entered on the 23d day of October, 1883.   That afterwards, on  the  12th  day of September, 1884, the  defendant,  Andreas  Palmer,  separately appealed from the judgment so  entered.

No motion for a new trial was ever made, and no bill of exceptions was ever filed  or  settled.   The  transcript  as sent  to this court consists of  copies  of  the  summons,  the  complaint, the joint answers of the defendants, the separate answer of Andreas Palmer, the findings and judgment  of  the court and the certificate of the judge.   There is in the judgment roll, a paper which purports to be a property statement of  each  of  the defendants, and signed  by each separately, bearing date September 14, 1882, but  having  no  date of filing or any marks or endorsements, by which to identify it, or to show how it comes in the judgment roll.   It follows the separate answer of Andreas Palmer and precedes the  findings and  judgment of the court, but is not referred to in either  paper.   There  is  also  another paper which  immediately  follows  the judgment, denominated an "Assignment of  Errors," and is in words following, to-wit: "The defendant, Andreas  Palmer, separately  excepts  to  the findings of fact herein, in so far as such findings include a finding that said defendant was a partner of  the defendants, W. O. Palmer and C. K. Elliott, at the time alleged  in  the  said complaint, or at any other time.   Said  defendant also  excepts  to the  following  conclusion  of  law  herein:   'The court finds as matter of law, that at  the time said goods were sold by plaintiffs to defendants, Andreas Palmer was, so far at least as these plaintiffs are concerned, a partner of the said firm of  Palmer & Elliott, and as such liable to the plaintiffs for  the  amount due the plaintiffs on the sale made by  the  said  plaintiffs to defendants.' "  This paper also has  no  date and  no  endorsements. Although  denominated  an "Assignment of  Error" it was evidently intended to be an exception to the findings  and  conclusions of the judge; but it does not appear ever  to have been allowed or settled or to  have  ever been brought to the attention of the court; but it must  have  been, like  the  property state-

ment; interpolated into the judgment roll, as we shall soon see by examining the certificates of the judge and clerk.

Following this "Assignment of Error" is a copy of the notice of appeal and undertaking, which seem to be in form and properly served. Then comes the certificate of the judge, which is in words and figures following:

"I hereby certify that the foregoing papers, consisting of summons, complaint, answer, separate answer of Andreas Palmer, and findings and order for judgment are contained in and constitute the judgment roll and the whole of such judgment roll.                    S. A. HUDSON,
                                                          Judge."

Then follows the certificate of the clerk under his hand and seal, which is as follows:

"Territory of Dakota, County of Grand Forks—District Court,
    Third Judicial District.

I, D. D. Webster, clerk of the district court within and for the said county of Grand Forks, in the Third judicial district of the Territory of Dakota, do hereby certify that the above and foregoing is a true, full, correct and complete transcript and copy of the notice of appeal and proof of service thereof, of the judgment roll, and of the certificate of the judge in said entitled action wherein C. H. Fargo & Co. are plaintiffs and Palmer & Elliott are defendants, as the same now appears of record in the said court. In witness whereof I have hereunto set my hand and affixed the seal of said court this 2nd day of October A. D. 1884.                    D. D. WEBSTER,
    [SEAL.]                                              Clerk.
By O. A. WEBSTER, Deputy."

Following these certificates of the judge and clerk; and as a separate bundle of papers, though fastened to the judgment roll by a single fastening, is what would seem to be a transcript of the stenographer's notes of the testimony taken at the trial, but there is no certificate of judge, clerk, or even of the stenographer himself to identify it; there is nothing to show how it came into this court, or from what court or place it came, or

how it came to be attached to the judgment roll. From such a transcript as this, appellant printed his abstract and attorneys, upon such abstract and transcript, have submitted their printed briefs and arguments, asking the court to review the findings of the court upon all the evidence in the case. But this court has been subject to and governed by a Code of Civil Procedure, from the organization of the territory—a period of almost a quarter of a century; and since 1867—a period of almost twenty years—by the same Code of Procedure it now has, with slight changes only as to the practice on appeal. And whenever changes have been made, the statutes of other states have been adopted in *hæc verba*, so that the decision of such state would guide the practician in the doubtful construction of such amendments. This court has again and again spoken in no uncertain tones as to this negligence and want of care in the practitioner.

In Gress v. Evans *et al.*, 1 Dak. 387, where the attorneys for the respective parties undertook to bring their case to this court upon a stipulation as to the alleged errors, the court in striking out and eleminating such extraneous matter from the record, says: "It should furthermore be borne in mind that under both Codes the judge is a recognized entity in making a case or in settling exceptions. His concurrence or approbation as a general proposition, is necessary in the formulating of either the one or the other. In his absence and without his knowledge or consent, attorneys cannot do this for him, especially when nearly two years have run from the termination of a trial. These remarks are naturally suggested by the anomalous proceedings before us; for among the batch of so-called uncertified evidence thrust upon our attention, there is a certain portion which, most manifestly, was never offered in the trial court. Altogether, the case as thus attempted to be made up, very much resembles an agreement to submit facts in controversy, to this court in the first instance, which were not heard or determined in the district court. We must therefore take the record as it legally comes before us, and ascertain what, if any, errors are in it." In that case there was a gen-

eral exception allowed by the court and appended to the findings and conclusions of the judge, in the following words: "To which findings of facts, conclusions of law and order of the court the defendants except." And the entire evidence was presented to the court upon stipulation signed by the attorneys of appellants and respondents, that it was all the evidence in the case; yet this court held that it must be made a part of the record by the court below, and properly authenticated before it could be examined here.

In the matter of opening Gold Street, Deadwood, v. Newton, 2 Dak. 149, the clerk of the district court sent up the evidence used before the board of county commissioners, under his certificate and seal, but it did not appear to have been settled and allowed by the district judge and made a part of the record in the case, and this court struck it out on motion—and also the bill of exceptions which had been settled and allowed by the trial judge, but not within the time allowed by statute. Says this court in that case, by MOODY, J.: "All that portion of the record purporting to be the evidence adduced before the board of county commissioners, as has been said, is in no way authenticated; * * * To preserve it for this court, it must be offered in the district court and incorporated in a bill of exceptions, which was not done in this case. It follows the motion must be sustained. Nothing remains for us to consider as a part of the record before us, save the order and decision appealed from, the verdict and judgment."

The manner of settling bills of exception, and bringing appeals to this court, is again very carefully gone over by Mr. Justice MOODY in French v. Lancaster, 2 Dak. 276; and in another very carefully prepared opinion in case of Golden Terra Mining Co. v. Smith et al. 2 Dak. 377.

In the case last above cited on page 458, referring to the notes of the stenographer, the court says: "While the law authorizes the district courts in their discretion to appoint stenographers, and provides for their compensation, it does not in any way make their notes in civil cases official; nor is there any mode for the authentication of them, or of the tran-

scripts therefrom, other than the mode for the authentication of
evidence taken in any other manner or by any other person to-
wit: by the signature of the judge to the bill of exceptions, or
case, in which they, or such parts as are necessary to the bill,
are incorporated."

In a later case, St. Croix Lumber Co. v. Pennington, 2
Dak. 467, a large number of foreign papers were sought to be
engrafted upon, and a large amount of extraneous matter was
sought to be injected into the record; and this court again in a
lengthy and exhaustive opinion, goes over the whole ground
anew, and clearly points out to the practitioner, what consti-
tutes the judgment roll proper, and the method and several
steps by which the record for review may be made up. The
appellant in that case sought shelter under the certificate pro-
vided for by Rule 13 (as then numbered) of this court, but in
answer to such position of courts, this court said: "Rule 13
is, therefore, additional and precautionary, and for the better
security of the record. It aims at exactness, so that the bill or
case may precisely conform to the truth, by naming each paper
that enters into the judgment roll. It is intended to protect
the rights of parties and to prevent any possibility of wrong.
But it was never imagined that it could be construed into a sub-
stitute for anything expressly demanded by the statute, or that
it could supersede the preparing, presenting, settling and sign-
ing of an ordinary bill or case. The mere fastening together
of papers, without the usual heading and narrative of the oc-
currences of the trial, is in no true sense, a statement of a case
or a bill of exceptions. Such is the nature of the transcript
before us; and the appellant can find no shelter under the im-
provident certificates. In fine, every requirement of the code
must be first fulfilled, before Rule 13 can be called into operation,
or can have any effect." But without these adjudications of
our courts, and the express instructions therein contained, it
would seem the practitioner ought not to impose upon the ap-
pellate court as was done in this case; Articles VIII and IX of
the Code of Civil Procedure point out the methods of moving
for new trials and of taking and saving exceptions; and Section

299 specifically enumerates what papers shall constitute the judgment roll or record in the case,—among which are the "Exceptions" or "Case" referred to in said Articles VIII and IX.

An appeal from the judgment, brings to this court, the judgment proper for review,—and the court can look at nothing not contained and made a part of the judgment roll by the court below. The appellate court is powerless to hear and determine cases in any manner, but that pointed out by the statute. It can make no rules in derogation of the statute, regulating the appeal for the accommodation of suitors, and the convenience of attorneys. There is no absolute right of appeal or review,—it is purely a statutory remedy, and to avail himself of the remedy, the suitor must come clearly within the provisions of the statute granting the appeal, and prescribing what may be, and the manner in which questions of law may be heard and determined by the appellate tribunal. None of the presumptions in favor of courts of original jurisdiction, obtain in, or attach to appellate courts. They are courts of review merely, and are strictly confined to an examination of the errors apparent of record. They have no power to receive, and are strictly prohibited from examining into or listening to any matters or things *de hors* the record. This is so elementary a principle governing appellate courts, that its statement is sufficient proof of its correctness. In the cases that have been heretofore brought to this court, there has generally been some excuse for the practitioner, as for instance in Gress v. Evans *et al.* it might be suggested that in some states the practice does obtain of hearing causes upon an agreed statement of counsel, as permitted by statute,—and counsel may have inadvertently been led to suppose such a practice not to be improper here; and in St. Croix Lumber Co. v. Pennington, the certificate of the judge seemed to enumerate and specify the "foreign" papers as a part of the judgment roll,—as was also the case in the Gold Street Case; but here there is no possible excuse,—it is an attempt to interpolate into the judgment roll,

papers constituting no part of, and in no way connected with it.

The certificate of the judge enumerates the papers constituting the judgment roll, to-wit: the summons, complaint, answer, separate answer of Andreas Palmer, findings and order for judgment; and concludes by saying they "are contained in and constitute the judgment rol¹ and the whole of such judgment roll." ·And the clerk's certificate again enumerates the papers constituting the judgment roll; and in neither of them is any mention made of these papers printed in the abstract and sought to be used in this court. And it may not be out of place here to call attention of practitioners to the fact, that the abstract provided for by the rules of this court, means what its name imports,—an abstract or abridgment of the transcript. It is not infrequent that the court, upon an examination of the abstract, finds that it contains statements not contained in or or borne out by the transcript. The abstract should not only be truthful but it should, and is intended to contain all the matter necessary to a complete understanding of the case; and a statement of all the facts upon which the appellant relies to reverse his case. It should also show, by setting out the record or by concise statement of facts, with proper reference to the page of the transcript, where the record may be found, that all the steps necessary to perfect the appeal, and to present the errors complained of, have been complied with in accordance with the statutes, and the rules of this court. In other words, the abstract should present to this court so much of the transcript, as will clearly exhibit the jurisdiction of the court, and the errors sought to be reviewed; so that the appellate court will never be required to refer to the transcript, unless to settle some point of controversy raised by an amended abstract or argument of counsel.

This, then, being an appeal from the judgment, and no error appearing in the record, the judgment of the court below is affirmed. All the justices concurring.