# GLASPELL v. NORTHERN PACIFIC RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NORTH DAKOTA.

No. 1330. Submitted March 14, 1892. — Decided April 4, 1892.

Upon the trial of this case in the District Court in Dakota, a verdict was returned, November 24, 1888, in favor of plaintiff for $12,545.43, and judgment was rendered accordingly November 26, 1888. On November 28, 1888, the court made an order by consent extending the time for serving notice of intention to move for a new trial, for motion for new trial, and for settlement of a bill of exceptions until January 28, 1889; which time was subsequently extended by order of court for reason given, to February 28, and thence again "for cause" to March 28, 1889, upon which day the following order was entered: "The defendant having served upon plaintiff a proposed bill of exceptions herein, the time for settlement of same is hereby extended from March 28, 1889, to April 10, 1889, and the time within which to serve notice of the intention to move for new trial, and within which to move for new trial, is hereby extended to April 13th, 1889." The time was again extended to May 31, 1889, and on the 23d day of that month the following order was entered: "The date for settling the bill of exceptions proposed by the defendant herein is hereby extended to June 29, 1889. Defendant may have until ten days after the settling of said bill within which to serve notice of intention to move for a new trial, and within which to move for a new trial in said action." This was the last order of extension. On December 14, 1889, there was filed in the office of the clerk of the District Court a notice of motion for new trial, which was as follows: "Take notice that the motion for a new trial herein will be brought on for argu-

ment before the court at chambers, at Jamestown, Dakota, on September 12, 1889, at 10 o'clock A.M., or as soon thereafter as counsel can be heard." On the margin of this notice appeared this indorsement: "Hearing continued until the 21st September, 1889. Roderick Rose, Judge." The notices and motion seem to have been served September 3, 1889. The bill of exceptions was signed August 30, 1889, and filed September 3, 1889. The certificate thereto concluded thus: "Filed as a part of the records in this action this August 30th, 1889, (and within the time provided by law, as enlarged and extended by orders of the judge of this court.)" On February 17, 1890, the judge further certified: "The above and foregoing certificate is hereby modified and corrected so as to conform to the facts and record in the case by striking out all that part of it in the two last lines thereof preceding my signature and after the words and figures ' August 30th, 1889.'" On November 2, 1889, the State of North Dakota was admitted into the Union. *Held,*

(1) That this bill of exceptions was not settled and filed within the time allowed by law or under any order of the court;

(2) That the alleged motion for a new trial not having been filed until December 14, 1889, was not made, and no notice of intention to make it was given, within the time allowed by law or by any order of the court;

(3) That a renewal of notice and motion after the State was admitted, if it could have been made, would necessarily have been in the state court, whose jurisdiction would have attached to determine it.

THE court stated the case as follows:

This was an action brought by Glaspell against the Northern Pacific Railroad Company, February 24, 1885, in the District Court for Stutsman County, in the Sixth Judicial District of the Territory of Dakota, to recover damages for deceit in the sale by defendant to plaintiff of two thousand two hundred and forty acres of land. Upon the trial of the case in that court a verdict was returned, November 24, 1888, in favor of plaintiff for $12,545.43, and judgment was rendered thereon, November 26, 1888, for said amount, with costs, taxed at $64.15. On November 28, 1888, the court made an order by consent extending the time for serving notice of intention to move for a new trial, for motion for new trial, and for settlement of a bill of exceptions until January 28, 1889, which time was subsequently extended by order of court for reason given, to February 28, and thence again "for cause" to March 28, 1889, upon which day the following order was entered:

" The defendant having served upon plaintiff a proposed bill of exceptions herein, the time for settlement of same is hereby extended from March 28, 1889, to April 10, 1889, and the time within which to serve notice of the intention to move for new trial, and within which to move for new trial, is hereby extended to April 13th, 1889." The time was again extended to May 31, 1889, and on the 23d day of that month the following order was entered: " The date for settling the bill of exceptions proposed by the defendant herein is hereby extended to June 29, 1889. Defendant may have until ten days after the settling of said bill within which to serve notice of intention to move for a new trial, and within which to move for a new trial in said action." This was the last order of extension.

On December 14, 1889, there was filed in the office of the clerk of the District Court for Stutsman County, North Dakota, a notice of intention to move for a new trial and a notice of a motion for new trial. The notice of intention stated that the motion would be made upon the bill of exceptions, &c., and the notice of motion was as follows: " Take notice that the motion for a new trial herein will be brought on for argument before the court at chambers, at Jamestown, Dakota, on September 12, 1889, at 10 o'clock A.M., or as soon thereafter as counsel can be heard." On the margin of this notice appeared this indorsement: " Hearing continued until the 21st September, 1889. Roderick Rose, Judge."

The notices and motion seem to have been served September 3, 1889. The bill of exceptions was signed August 30, 1889, and filed September 3, 1889. The certificate thereto concluded thus: " Filed as a part of the records in this action this August 30th, 1889, (and within the time provided by law, as enlarged and extended by orders of the judge of this court.")

On February 17, 1890, the judge further certified: " The above and foregoing certificate is hereby modified and corrected so as to conform to the facts and record in the case by striking out all that part of it in the two last lines thereof preceding my signature and after the words and figures ' August 30th, 1889.' "

On November 2, 1889, the State of North Dakota was admitted into the Union. On the 7th of December, 1889, there was filed in the District Court for Stutsman County, North Dakota, the petition of the defendant stating that it is a corporation created under acts of Congress; that the action was commenced and was now pending in said District Court; setting forth the trial, verdict and judgment, the settlement and allowance of the bill of exceptions August 30, 1889, the service of notice of intention to move for a new trial, the continuance of the hearing of the motion until September 21, 1889; and alleging that the motion had not been decided, but was now pending; that the matter in controversy exceeded two thousand dollars exclusive of costs; that the action was one arising under the laws of the United States, and to which moreover petitioner had a defence arising under such laws; that the action arose and was commenced in the Territory of Dakota and within the limits of that portion of the Territory which had since been admitted into the Union as the State of North Dakota; that the action was pending in the District Court of Stutsman County at the time of the admission of the State, and " is a suit of which the Circuit Court of the United States for the District of North Dakota might have had jurisdiction under the laws of the United States had such Circuit Court of the United States for the District of North Dakota been in existence at the time of the commencement of said action; " and that the petitioner is entitled under the acts of Congress in such cases made and provided, and more particularly under the act of Congress approved February 22, 1889, to enable the people of North Dakota, etc., to form a constitution and state government, and to be admitted into the Union, to remove said suit into the Circuit Court of the United States for the District of North Dakota for proceedings therein; and petitioner accordingly tenders bond, etc. Bond in the usual form on removal was filed at the same time with the petition. On March 14, 1890, the clerk of the District Court certified to copies of the petition and bond, and also that he refused " to transmit the files, records and proceedings in said cause to the United States Circuit Court for the District of North Dakota

for the sole reason that the judge of the District Court for Stutsman County has forbidden me so to do."

On March 26, 1890, the defendant applied to the Circuit Court of the United States for the District of North Dakota for an alternative writ of *certiorari* directed to the judge of the District Court of the Fifth Judicial District within and for Stutsman County, North Dakota, upon the affidavit of the attorney for the defendant, together with copies of the petition and bond duly certified by the clerk of the state court. The affidavit was to the effect that "after the admission into the Union of the State of North Dakota, and prior to the filing of said petition in the office of the clerk of the District Court for Stutsman County, your petitioner did not in any manner invoke the aid or action of the state court in said cause; that during the period aforesaid the state court did not make any orders or exercise any act of jurisdiction in said cause, save that all the papers, files and proceedings and records therein remained and now remain in the care and custody of the clerk of said court for Stutsman County as the successor in office of the clerk of the Territorial District Court wherein said action originated, was tried, and was pending at the date of the admission of the State of North Dakota into the Union;" and that the legal fees due the clerk of the state court had been tendered, and demand made that he transmit the files, records and proceedings to the United States court, which he refused to do. Thereupon an alternative writ of *certiorari* was issued in said cause directed to the judge of the District Court for the Fifth Judicial District of North Dakota, requiring him to show cause, etc., to which the clerk of the state court by direction of the judge of said court made a return, setting up the institution of the action, the verdict and judgment, the various orders extending the time for settling the bill of exceptions, the signing of the bill August 30, 1889, and the certificates of that date and of February 17, 1890, etc. The return also stated that "an execution was issued on said judgment, February 17, 1890, and is now in the hands of the sheriff of Stutsman County." The clerk further certified that at no time had the defendant demanded a certified copy or transcript of the

files, records and proceedings, but that he demanded that the clerk transfer to the Circuit Court the original files and proceedings in the action.

A motion was made April 7, 1890, to discharge the order to show cause and overruled, and the writ of *certiorari* ordered to issue July 11, 1890, requiring the clerk of the District Court of Stutsman County to transmit to the United States court at Bismarck "all the files, records and proceedings of said case, and certified copies of any entries in the books of all records remaining in said District Court of Stutsman County in this cause." The writ thereupon issued, and was complied with July 28, 1890. A motion to remand was then made in the Circuit Court and denied, and on October 10, 1890, a motion for a new trial was heard and taken under advisement, and granted November 3, 1890. 43 Fed. Rep. 900.

The case was subsequently retried in the Circuit Court, the plaintiff insisting throughout upon his objection to the jurisdiction of the court, and resulted in a verdict for plaintiff for $1120. on which judgment was entered with costs taxed at $249.95. From that judgment this writ of error is prosecuted.

*Mr. Edgar W. Camp* and *Mr. Samuel L. Glaspell* for plaintiff in error.

*Mr. A. H. Garland* and *Mr. H. J. May* for defendant in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The constitution of North Dakota was submitted to a vote of the people on the first Tuesday in October, 1889, (falling that year on the first day of the month,) at which time all the State and District officers created and made elective by the instrument, including the judges of the Supreme and District Courts, were elected, it being also provided that they should take the required oaths of office within sixty days after the proclamation of the President admitting the State. This was

issued November 2, 1889, but during the interval, from October 1 to the qualification of the judges, the continuity of the courts was preserved by the sixth section of the schedule to the constitution, (Laws N. Dakota, 1891, p. 55,) which reads thus:

"§ 6. Whenever any two of the judges of the Supreme Court of the State, elected under the provisions of this constitution shall have qualified in their offices, the causes then pending in the Supreme Court of the Territory on appeal or writ of error from the District Courts of any county or subdivision within the limits of this State, and the papers, records and proceedings of said court shall pass into the jurisdiction and possession of the Supreme Court of the State, except as otherwise provided in the Enabling Act of Congress, and until so superseded the Supreme Court of the Territory and the judges thereof shall continue, with like powers and jurisdiction as if this constitution had not been adopted. Whenever the judge of the District Court of any district elected under the provisions of this constitution shall have qualified in his office, the several causes then pending in the District Court of the Territory within any county in such district, and the records, papers and proceedings of said District Court, and the seal and other property pertaining thereto, shall pass into the jurisdiction and possession of the District Court of the State for such county, except as provided in the Enabling Act of Congress, and until the District Courts of this Territory shall be superseded in the manner aforesaid, the said District Courts and the judges thereof shall continue with the same jurisdiction and power to be exercised in the same judicial districts respectively as heretofore constituted under the laws of the Territory."

The twenty-third section of the act of Congress of February 22, 1889, entitled, "An act to provide for the division of Dakota into two States and to enable the people of North Dakota, South Dakota, Montana and Washington, to form constitutions and state governments and to be admitted into the Union on an equal footing with the original States and to make donations of public lands to such States," is as follows:

"Sec. 23. That in respect to all cases, proceedings and

matters now pending in the Supreme or District Courts of either of the Territories mentioned in this act at the time of the admission into the Union of either of the States mentioned in this act and arising within the limits of any such State, whereof the Circuit or District Courts by this act established might have had jurisdiction under the laws of the United States had such courts existed at the time of the commencement of such cases, the said Circuit and District Courts, respectively, shall be the successors of said Supreme and District Courts of said Territory; and in respect to all other cases, proceedings and matters pending in the Supreme or District Courts of any of the Territories mentioned in this act at the time of the admission of such Territory into the Union, arising within the limits of said proposed State, the courts established by such State shall, respectively, be the successors of said Supreme and District Territorial courts; and all the files, records, indictments and proceedings relating to any such cases, shall be transferred to such Circuit, District and state courts, respectively, and the same shall be proceeded with therein in due course of law; but no writ, action, indictment, cause or proceeding now pending, or that prior to the admission of any of the States mentioned in this act, shall be pending in any territorial court in any of the Territories mentioned in this act, shall abate by the admission of any such State into the Union, but the same shall be transferred and proceeded with in the proper United States Circuit, District or state court, as the case may be; *Provided, however*, That in all civil actions, causes and proceedings, in which the United States is not a party, transfers shall not be made to the Circuit and District Courts of the United States, except upon written request of one of the parties to such action or proceeding filed in the proper court; and in the absence of such request such cases shall be proceeded with in the proper state courts." (25 Stat. c. 180, 676, 683.)

This section embodies the view thus expressed by Mr. Justice Clifford, speaking for the court, in *Baker* v. *Morton*, 12 Wall. 150, 153: "Whenever a Territory is admitted into the Union as a State, the cases pending in the territorial courts

of a Federal character or jurisdiction are transferred to the proper Federal court, but all such as are not cognizable in. the Federal courts are transferred to the tribunals of the new State. Pending cases, where the Federal and state courts have concurrent jurisdiction, may be transferred either to the state or Federal courts by either party possessing that option under the existing laws."

By its terms, cases exclusively of Federal jurisdiction are consigned to the courts of the United States, and cases exclusively of state jurisdiction to the courts of the State, while the proviso applies to cases of concurrent jurisdiction, which may proceed in the state courts or be transferred on request to the United States courts. But in order to such transfer, the action, cause or proceeding must be "pending."

Assuming that, because defendant was a corporation created by the United States, this was a case " whereof the Circuit or District Courts by this act established might have had jurisdiction under the laws of the United States had such courts existed at the time of the commencement " of the case, and that if it stood on motion for new trial it was so far pending as to be susceptible of removal, what was the fact when the petition was filed in the state court December 7, 1889 ?

By section 5343 of the Compiled Laws of Dakota of 1887, referred to by counsel for defendant, it was provided that " an action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment be sooner satisfied." But the meaning of the act of Congress is not to be determined by provisions of that character in territorial laws. If this case had gone to judgment and no motion for a new trial had been made, or, if made, had been abandoned or overruled prior to the admission of the State, then there was no cause, proceeding or matter pending which would justify the Circuit Court in taking jurisdiction.

Under section 5216 of the Dakota Code, already referred to, appeals " must be taken within two years after the judgment shall be perfected, by filing the judgment roll."

The conclusion that cases in the Dakota local courts are

pending, without action therein, for two years after rendition of judgment, so as to be capable of being transferred on request into the Circuit Court, is quite inadmissible.

The record of cases of exclusive Federal jurisdiction which have gone to judgment should, indeed, be transmitted to the Circuit Court and the judgments there enforced, but where final judgment has been rendered in cases of concurrent jurisdiction, no reason can be assigned for, nor do the terms of the act of Congress contemplate, such a transfer.

By section 5090 of the Compiled Statutes of Dakota: "The party intending to move for a new trial must, within twenty days after the verdict of the jury, if the action were tried by jury, or after notice of the decision of the court, if the action were tried without a jury, serve upon the adverse party a notice of his intention, designating the statutory grounds upon which the motion will be made and whether the same will be made upon affidavits, or the minutes of the court, or a bill of exceptions, or a statement of the case," etc.

Under section 5092: "The application for a new trial shall be heard at the earliest practical period after service of notice of intention, if the motion is to be heard upon the minutes of the court, and in other cases, after the affidavits are served or the bill of exceptions or statement, as the case may be, is filed, and may be brought to a hearing in open court or before the judge at chambers, in any county in the district in which the action was tried, by either party, upon notice of eight days to the adverse party, specifying the time and place of hearing," etc.

Section 5083 provides: "When a party desires to have exceptions taken at a trial settled in a bill of exceptions, he may, within thirty days after the entry of judgment, if the actions were tried with a jury, or after receiving notice of the entry of judgment, if the action was tried without a jury, or such further time as the court in which the action is pending, or a judge thereof, may allow, prepare a draft of a bill and serve the same, or a copy thereof, upon the adverse party. Such draft must contain all the exceptions taken, upon which the party relies. Within twenty days after such service the

adverse party may propose amendments thereto and serve the same, or a copy thereof, upon the other party. The proposed bill and amendments must, within ten days thereafter, be presented by the party seeking the settlement of the bill to the judge who tried or heard the case, upon five days' notice to the adverse party, or be delivered to the clerk of the court for the judge. . . ."

Section 5093 reads: "The court or judge may, upon good cause shown, in furtherance of justice, extend the time within which any of the acts mentioned in sections 5083 and 5090 may be done, or may, after the time limited therefor has expired, fix another time within which any of such acts may be done."

Section 4939 provides: "The court may likewise, in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited by this code, or, by an order, enlarge such time; and may also, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding," etc.

In *St. Croix Lumber Co.* v. *Pennington,* 2 Dakota, 467, the Supreme Court of the Territory decided that, under the code as it then existed, if a bill of exceptions was not presented for settlement within the time fixed by statute, or such other time as might be allowed by the court or judge, no power existed for its allowance. But the Supreme Court of North Dakota, in *Northern Pacific Railroad Co.* v. *Johnson,* 1 North Dakota, 354, held that, under sections 4939 and 5093 of the Compiled Laws, the District Court could, after the time granted for settling a bill had expired, without making an order extending the time, and against objection, settle and allow such bill; the order of settling operating to extend the time until the date of actual settlement; and that "until the time for appeal has expired, all of the various steps leading up to and including a motion for a new trial may, with respect

to time, after statutory time has elapsed, be taken at any time allowed by the sound judicial discretion of the trial court. This court will presume that such discretion is properly exercised in all cases until the contrary appears.'

In *Moe* v. *Northern Pacific Railroad Co.* 50 N. W. Rep. 715, however, the court held that the authority conferred by section 5093 to extend the time to settle bills of exceptions and statements after the statutory periods for so doing had expired, "is not an absolute, non-reviewable discretion, but on the contrary, such discretion is a sound judicial discretion, and can be exercised only upon the conditions named in the statute, *i.e.,* .'upon good cause shown in furtherance of justice.' Where the cause shown is spread out in full upon the record in the court below, and an objection to the action of the court below in settling the bill or statement is properly made, this court, upon a motion to purge its records, will review the cause shown; and if, in the opinion of this court, good cause was not shown for settling the bill or statement after time, such motion will be granted, and the bill or statement will be stricken out."

In the case at bar, the time within which to settle a bill of exceptions was extended six times. The first was by consent of counsel, the second for reasons given, the third, as asserted, "upon good cause shown," and the fourth, fifth and last extension assigned no ground. The last order of extension expired June 29, 1889, defendant having ten days after the settling of the bill within which to serve notice of intention to move for new trial and within which to move for a new trial. The bill of exceptions was, nevertheless, signed August 30, 1889, and filed September 3. The certificate originally stated not only the date but that the settlement was "within the time provided by law, as enlarged and extended by orders of the judge of this court," but subsequently these words were stricken out by the judge, and the question whether the bill was improvidently signed or not was left open, unless the rule be applied, as subsequently laid down by the Supreme Court of the State, that the settlement, whenever made, in itself operated to extend the time. Notice of the intention to move

and of the motion appear to have been given on the third of September, returnable on September 12, 1889, and the hearing appears to have been extended by the judge until September 21.   Here the record becomes silent.

It is nowhere disclosed that the defendant appeared to prosecute its motion on the 21st of September, and whatever liberality might be indulged under the provisions of the territorial code, as now expounded by the Supreme Court of the State, we are not prepared to hold, in passing upon the question before us, that any motion was pending on the 7th of December, 1889, there being no evidence whatever that a motion was ever made, except the action of the court assigning the hearing of a proposed motion, for a day more than two months before, which came and went without such hearing, the meditated motion having apparently been waived and abandoned.

This bill of exceptions was not settled and filed within the time allowed by law or under any order of the court.   The alleged motion for a new trial was not filed until December 14, 1889, and had not been made, and no notice of intention to make it given, within the time allowed by law or by any order of the court.   If such notice of intention could lawfully have been given or renewed, or such motion have lawfully been made, within the view of the state tribunal, notwithstanding the expiration of time, this had not been done, and the motion was not pending within the intent and meaning of the twenty-third section of the Enabling Act, when the application for removal was made, even if a removal could have been had, thereunder, if such a motion had been then pending.   And the renewal of notice and motion after the State was admitted, if it could have been made, would necessarily have been in the state court, whose jurisdiction would have attached to determine it.   On August 22, 1890, notice was given that "the motion for a new trial heretofore made in this action" would be brought on for hearing, in the Circuit Court, on September 5, 1890, and the record recites that on October 10, 1890, "defendant moves for a new trial."   The motion could not be treated as having come over from the territorial court, nor

could such a motion be made in the Circuit Court, as final judgment precluded the transfer.

We are of opinion that the motion to remand should have been sustained, and, therefore,

*Reverse the judgment, and remand the case to the Circuit Court with directions to send it back to the District Court for the fifth judicial district, Stutsman County, North Dakota, and to return the original files to that court.*