(125 N. W. 470.)

---

HUGH CAMPBELL, JR., v. WARREN COULSTON AND JOSEPH W. BULL.

Opinion filed January 14, 1910.

**Judgment—Who May Vacate—Purchaser of Property Subject to Void Judgment—Equity.**

1. A person who purchases property upon which a judgment, void for want of jurisdiction appearing upon its face, is a cloud, is not entitled as a matter of right to have such judgment vacated on motion.

**Judgment—Motion to Vacate—Judgment Void for Want of Jurisdiction—Discretion of Court.**

2. The court in which such motion is made may in the exercise of sound judicial discretion entertain the same, or it may require the moving party to resort to his remedy by action,

**Mortgage Foreclosure—Void Judgment—Vacation—Abuse of Discretion.**

3. B., having procured a quitclaim deed for a consideration of "one dollar and other valuable consideration," of lands which were sold pursuant to a judgment in foreclosure rendered nearly 22 years prior thereto, moved to vacate such judgment upon the ground that the same is void upon its face on account of defects in the affidavit for the service of the summons by publication.

*Held*, under the particular facts, for reasons stated in the opinion, that the trial court abused its discretion in entertaining and granting such motion.

Territorial and State Courts—Succession—Effect of State's Admission—
Jurisdiction of State Courts—Vacation of Judgment.

    Held, further, that the state district court is not the successor of
the territorial district court which rendered such judgment for the pur-
pose of inquiring into the merits of such litigation the action having
at the date of the admission of North Dakota into the Union ceased
to be pending. Hence such state court had no jurisdiction to vacate
such judgment on motion. Bank v. Braithwaite, 7 N. D. 358, 75 N.
W. 244, 66 Am. St. Rep. 653, distinguished.

Appeal from District Court, Burleigh county; *Winchester, J.*

Action by Hugh Campbell, Jr., against J. Warren Coulston to
woreclose a mortgage. From an order vacating a judgment of fore-
closure on motion of Joseph Bull, plaintiff appeals.

Reversed.

*F. H. Register, John W. Noble, S. E. Ellsworth and Guy C. H.
Corliss,* for appellant.

Judgment can be vacated on motion only in the court where ren-
dered. 17 Am. and Eng. Enc. of Law, (2nd Ed.) 842; Garlock v.
Calkins, 14 S. D. 90, 84 N. W. 393; Elder v. Mining Co., 58 Fed.
536; Buffham v. Perkins, 44 N. W. 1150; Coon v. Seymour, 37 N.
W. 243; 1 Black on judgments, p. 297.

Cases without action therein, two years after final judgment there-
in, are not "pending." Glaspell v. N. P. Ry. Co., 144 U. S. 211, 12
Sup. Ct. Rep. 593, 36 L. Ed. 409; Miller v. Sunde, 1 N. D. 1, 44
N. W. 301.

None but parties to a judgment can set it aside. 15 Enc. Pl. &
Pr. 250; Freeman on Judgments, Sec. 91; Packard v. Smith, 9 Wis.
184.

U. S. Courts can vacate a judgment on motion only at the term of
its rendition. Cameron v. M' Roberts, 3 Wheat. 591; 4 L. Ed. 47;
Bank of U. S. v. Mass. 6 How. 38-40; 12 L. Ed. 331.

*John W. Bull (R. N. Stevens, of Counsel),* for respondent.

One having an interest in the subject matter of a suit, may move
to vacate a judgment therein, although he is not a party to the rec-
ord. 14 Enc. Pl. & Pr. 97; Coffin v. Bell, 37 Pac. 240; People v.
Mullan, 4 Pac. 348; Chappel v. Chappel, 12 N. Y. 215.

Fisk, J. That in an appeal from an order of the district court
of Burleigh county dated September 28, 1907, vacating a judgment
entered on July 8, 1885, by the territorial district court in said
county.

The facts necessary to an understanding of the questions involved are as follows:

The judgment thus vacated was rendered in an action claimed to have been commenced by appellant against one Coulston for the foreclosure of a mortgage executed by one Patterson and wife covering 3,040 acres of real property in Burleigh county to secure a note of $5,000; such land having been conveyed subsequent to such mortgage to the said Coulston. On August 10, 1906, Coulston executed, for a stated consideration of $1.00 and other valuable consideration," a quitclaim deed of the lands to respondent Bull, who in April, 1907, procured from the judge of the district court of the Sixth judicial district an order requiring appellant to show cause "why the judgment and decree in this action should not be set aside and canceled of record on the ground that the court had no jurisdiction to enter said judgment and decree." Respondent based his sole right to move for the vacation of such judgment upon the quitclaim deed aforesaid, and he bases his right to such relief upon the sole ground "that the court has no jurisdiction to enter such judgment and decree, which want of jurisdiction appears on the face of said judgment and the judgment roll." The particular jurisdictional defect relied on was and is, alleged insufficiency of the affidavit for an order for publication of the summons in not stating any facts showing that the defendant, after due diligence, could not be found within the jurisdiction of the court.

The only service made on appellant of the order to show cause was by mailing in a registered letter a copy thereof addressed to him at St. Louis, Mo.

On May 21, 1907, plaintiff appeared specially before the district court and moved for the vacation of such order upon the grounds, among others, "(2) that the service of the order to show cause was entirely insufficient to give the court issuing the order jurisdiction; (3) that the district court of the Sixth judicial district of the state of North Dakota is not the court in which the action in which the order to show cause was issued, was commenced, or in which the decree which it was sought to vacate was entered, or the legal successor of said court, and that it was without jurisdiction to hear or determine any proceedings affecting the decree; (4) that it does not appear from the moving papers that Bull was a party to said action or the successor in interest of a party or entitled in any manner to move or proceed in said action; * * * (6) that, owing

to lapse of time, the judgment in said action was final and could
not be disturbed; and that (7) the matters presented by Bull's appli-
cation could not in any event be properly determined upon a sum-
mary application of this character or in any manner other than by
civil action." This motion was denied, whereupon plaintiff filed a
return to the order to show cause, in which he set forth at length
many facts and reasons why the relief asked by the respondent
Bull should not be granted. We deem it unnecessary to incorpor-
ate such return herein.

It conclusively appears that defendant Coulston was personally
served with a copy of the summons and complaint at his home in
Philadelphia, Pa., and had ample opportunity, if he desired, to ap-
pear and defend the foreclosure suit, but he suffered a default, and
at no time during the long period of time has he sought in any
manner to question the validity of such decree. That plaintiff pos-
sessed a meritorious cause of action is questioned neither by Coul-
ston nor Bull, his grantee.

Pursuant to such decree of foreclosure, these lands were struck
off at public sale to plaintiff on August 22, 1885, for the sum of $5,-
433.26, which sale was confirmed by an order of the district court
dated September 2, 1885, and on October 11, 1886, a sheriff's deed
in due form of the premises aforesaid was executed and delivered
to the plaintiff by the sheriff of said county, which sheriff's deed was
duly recorded on October 13, 1886, ever since which time plaintiff
has in good faith claimed to be the owner of said lands and has ex-
ercised acts of ownership therein by the payment of taxes and
otherwise.

It is thus apparent that Respondent Bull stands before this court
in the inequitable position of attempting to obtain through a mere
technicality, namely, a defect in the affidavit for publication of the
summons, and in the light of the strongest possible equities in plain-
tiff's favor, and at a time nearly 22 years subsequent to the entry of
judgment, affirmative equitable relief by motion with the ultimate
end in view of obtaining a large and valuable tract of land, which
apparently had been abandoned by his grantor, and this without so
much as tendering or being required to pay any portion of the
mortgage debt, or reimbursing the plaintiff for the taxes paid. A
case more destitute of equity cannot well be imagined. It would
therefore seem plain that the relief prayed for should not be granted
unless the movant has shown a clear, legal right thereto. Is he

entitled to such relief as a matter of strict legal right? We think not. Conceding, for the sake of argument, that the judgment is void, the respondent, by his motion to vacate the same, invokes the equitable powers of the court to the same extent as though he had resorted to an action in equity to cancel such judgment as a cloud upon his title, or had brought an action to quiet title or to determine adverse claims. Whether the court would entertain such motion or compel the movant to resort to his remedy by action in equity was discretionary, but, under the particular facts in this case, we hold that it was manifestly an abuse of discretion to permit respondent to proceed by motion instead of by an action. Bull being a stranger to the judgment, but claiming to have purchased defendant's rights in the subject-matter of the action, the court is called upon, as stated by appellant's counsel, "to decide a question of fact having no relation whatever to the question whether the judgment is void." That question of fact is whether the moving party has as a matter of fact and law secured the title of the defendant to the subject-matter affected by the judgment. This important question of fact has to be tried on affidavits, and, what is more, it may in many instances be tried in the absence of the real party who owns the subject-matter. In the light of these facts, the language of that eminent jurist, Judge Mitchell of the Minnesota Supreme Court, is particularly applicable. We quote: "We think that a judgment absolutely void for want of jurisdiction appearing on its face may be set aside on the motion of any person who, although not a party to the action, has an interest in the property upon which it is a cloud. Such a motion is not, strictly speaking, a proceeding in the action, but an application to have the records purged of an unauthorized and illegal entry. Hervey v. Edmunds, 68 N. C. 243; Blodget v. Blodget, 42 How. Prac. (N. Y.) 19; Mills v. Dickson, 6 Rich. Law (S. C.) 487; Milnor v. Milnor, 9 N. J. Law, 93; Hunter v. Stove Co., 31 Minn. 511, 18 N. W. 645. But such a practice is liable to encourage the intermeddling of strangers, and is subject to the possible danger of affecting the rights of parties not before the court, and therefore to be indulged in very cautiously. Moreover, one not a party to the action is not entitled as a matter of right to such relief. The granting of it is a matter wholly within the sound discretion of the court. There is no necessity for granting such relief, for a judgment, void on its face, can neither affect, impair, nor create rights, and is always and everywhere open to collateral at-

tack." Mueller v. Reimer, 46 Minn. 314, 48 N. W. 1120. To the same effect is the holding in Wisconsin, where, in speaking for the court, Dodge, J., said: "Although void, the court would not be bound to set the judgment aside upon motion, unless it appeared to be inequitable. Purcell v. Kleaver, 98 Wis. 102, 73 N. W. 322. Hence an application to set it aside in a measure always appeals to the equitable power and discretion of the court." Reeves & Co. v. Kroll, 133 Wis. 196, 113 N. W. 440. And in Purcell v. Kleaver, supra, the Wisconsin court used the following pertinent language: "Equity little heeds the complaint of one impeded· by a judgment which is merely void, but not unjust, but leaves him to struggle with his embarrassment as best he may at law." It is difficult to imagine any case where the facts more imperatively demand the application of the foregoing rule than the case at bar, and we entertain no doubt that the court below abused its discretion in entertaining and granting respondent's motion, after such a long lapse of time, nearly 22 years after the entry of judgment. Respondent by selecting his remedy by motion should not be permitted to obtain relief which manifestly would be refused him if he resorted to an action in equity. To say the least, his demand is grossly inequitable, and he does not come before the court with clean hands.

Thus far we have assumed that the lower court had jurisdiction to entertain the motion within the exercises of sound judicial discretion; and while the conclusions above reached, that such discretion was abused in granting respondent's motion, sufficiently disposes of this appeal, we desire to place our decision partly on another ground which we think equally conclusive in requiring a reversal of the order appealed from, and that is that the court below possessed no jurisdiction to vacate the judgment of the territorial court. As before stated, the purported judgment was rendered in the territorial district court on July 8, 1885. No appeal nor other steps were ever taken prior to statehood looking to any relief therefrom. In fact, the motion made in 1907 in the court below, which resulted in the order complained of, is the only attack ever made by any person upon such judgment. There can be no escape from the conclusion that the state district court is not the court which rendered such judgment, and hence it was without jurisdiction to vacate or annul the same *on motion,* unless such jurisdiction was in some manner conferred upon it so to do. It is asserted that it is the successor of the territorial court, and as such has the

requisite jurisdiction to entertain such motion. But, as will here-
after be seen, it is the successor of the territorial court to the ex-
tent only that it has been made such by competent authority. The
only competent authority for creating the state court the successor
of the territorial court is that of the United States government and
the state acting together. In other words, the territorial courts were
the creatures of the general government, and were created by Con-
gress pursuant to the clause of the United States Constitution which
empowers Congress to make all needful rules and regulations re-
specting territory belonging to the United States. McAllister v.
United States, 141 U. S. 174, (Co-op.) 183, 11 Sup. Ct. 949, 35 L.
Ed. 693. It inevitably follows, therefore, that the state cannot
without the consent of Congress, either express or implied, confer
upon its courts jurisdiction over the actions, judgments, or records
of such territorial courts. It is equally plain that Congress has no
power to prescribe the jurisdiction of the state courts, for they are
exclusively the creatures of the sovereign power of the state. Such
is the express holding of the United States Supreme Court in Hunt
v. Palao, 4 How. 589, 590, 11 L. Ed. 1115, and Benner v. Porter, 9
How. 235, 13 L. Ed. 119. In the former case it was said: "A
state law could not validly declare the records of a court of a ter-
ritory, which is a court under the laws of the United States, to be
a part of the records of its own state court. If the law of Florida
had placed the territorial records in the custody of the state court,
this would not have made them the records of that court, nor au-
thorized any proceedings upon them. The territorial court was a
court of the United States, and the control over its records belongs
to the general government, and not to the state authorities, and it
rests with Congress to declare to what tribunal these records and
proceedings shall be transferred, and how these judgments shall be
carried into execution, or reviewed upon writ of error." In the
latter case it was among other things said: "On the admission of a
territorial government into the union as a state, the concurrence of
both the federal and state governments would seem to be required
in the transfer of the records, in cases of appropriate state juris-
diction, from the old to the new government. An act of Congress
would be incapable of passing them under the state jurisdiction, as
would be an act of the Legislature of the state to take the records
out of the custody of the federal government. Both should con-
cur." Congress saw fit to give its express consent to the exercise

of such jurisdiction by the state courts only in certain pending cases. Enabling Act 23, makes the United States Circuit and District Courts the successors of the territorial courts in all pending cases, proceedings, and matters whereof such courts might have had jurisdiction had they existed at the time of the commencement of such cases; and in respect to all other pending cases, proceedings, and matters the state courts are made the successors of such territorial courts. It is provided, however, that in all civil actions in which the United States is not a party, transfers to the circuit and district courts of the United States shall not be made, except upon written request of one of the parties, and that, in the absence of such request, such cases shall be proceeded with in the proper state court. Miller v. Sunde, 1 N. D. 1, 44 N. W. 301; Gull River Lumber Co. v. School District, 1 N. D. 408, 48 N. W. 340.

It is entirely clear that the action here involved is one whereof the United States Circuit Court might have had jurisdiction had such court existed at the time the action was commenced, provided the necessary diverse citizenship of the parties existed, a fact not controverted. The fact that neither party was a citizen of Dakota Territory is immaterial. Jurisdiction of the federal court, had such court existed, would have been complete if plaintiff and defendant were citizens of different states. That such diverse citizenship in fact existed is, we think, at least impliedly admitted, but whether this be true or not, it is sufficient, for the purposes of the point now under consideration, that the federal court might, depending on extrinsic facts, have had jurisdiction. See Act Cong. March 3, 1875, c. 137, 18 Stat. 470 (U. S. Comp. St. 1901, p. 508), and 4 Encyc. of U. S. Sup. Ct. Rep. 936, and cases cited; also 11 Cyc. 949; 960; Grove v. Grove (C. C.) 93 Fed. 865; Merrihew v. Fort (C. C.) 98 Fed. 899. Assuming the existence of facts conferring jurisdiction on the federal court, if it was still a pending case, plaintiff would have had the undoubted right guaranteed to him by Congress to have had it transferred to and disposed of in the federal court. In view of the careful manner in which Congress has safeguarded such right to removal in pending cases of the character of this one. is it possible that they intended to leave the rights of non-residents as to judgments in actions which had ceased to be pending long prior to the admission of the territory as a state, subject to hostile action by state courts? We think not. Congress did not make, nor intend to make, the state court the successor of the territorial court

for the purpose of exercising jurisdiction, except in pending cases. This is apparent from the language used in the enabling act. There is nothing in the opinion in Bank v. Braithwaite, 7 N. D. 358, 75 N. W. 244, 66 Am. St. Rep. 653, inconsistent with these views. The question there was whether the state court had jurisdiction to enforce a territorial judgment where the action had ceased to be pending at the date of statehood. It was held that it had such jurisdiction, but the court was careful to limit its decision to the precise question there involved. We quote: "As to actions which were no longer pending, there was no reason for·providing that jurisdiction over such cases should be transferred to the federal courts. * * * In such cases the merits would no longer remain open to investigation, and therefore there would be no reason for taking jurisdiction of those cases away from the courts. No prejudicial, hostile state action could be apprehended." To the same effect is the holding of the United States Supreme Court in Glaspell v. Railroad Co., 144 U. S. 211, 12 Sup. Ct. 593, 36 L. Ed. 409. We quote from the opinion as follows: "The record of cases of exclusive federal jurisdiction which have gone to judgment should indeed be transmitted to the circuit court, and the judgment there enforced; but, where final judgment has been rendered in cases of concurrent jurisdiction, no reason can be assigned for, nor do the terms of the act of Congress contemplate, such a transfer." If the state court possessed the right to annihilate the judgment as was done in this case, how can it be·said that "in such cases the merits would no longer remain open to investigation, and therefore there would be no reason for taking jurisdiction of those cases away from the state courts. No prejudicial, hostile state action could be apprehended."

The action of the lower court was most certainly prejudicial and hostile to plaintiff, and this is true whether the judgment be deemed by the state court to be void or merely voidable. In either event, the state court assumed to exercise jurisdiction not conferred upon it, either expressly or impliedly. We feel confident that the state court had no jurisdiction to proceed by motion, as it did, to inquire into the validity of such judgment. It .could do so only by an appropriate action.

For the foregoing reasons, the order appealed from is reversed.

ELLSWORTH, J., being disqualified, took no part in the foregoing decision, Judge CRAWFORD of the district bench sitting in his place by request.

SPALDING, J. (dissenting). I am unable to concur in the conclusions in the majority opinion expressed by Judge Fisk. If, as found, the district court of Burleigh county had no jurisdiction of the pretended judgment and no power to vacate it, I can imagine no excuse for this court passing upon the validity or invalidity of such judgment or on the equities of the application. If the district court had no jurisdiction to pass on the merits or equities of the application, this court has none, and its decision thereon is a naked assumption of authority belonging to the federal court. It, however, has assumed to act, and this necessitates an expression of my opinion on all the points determined. I fail to gather from the authorities cited any substantial support for the decision. On the contrary, as I read them, with one or two exceptions which on a superficial examination may appear to support the majority opinion, they are in direct conflict therewith. Jurisdiction of the defendant, Coulston, was attempted to be obtained by constructive service under the provisions of the Code of 1877. Those provisions differ materially from the corresponding provisions of our present Code of Civil Procedure. Section 104, Rev. Code Dak. Terr. 1877, in force in 1885, as far as pertinent to the questions here reviewed, reads as follows: "When the person on whom the service of the summons is to be made cannot after due diligence be found within the territory and that fact appears by affidavit to the satisfaction of the court or judge thereof, * * * such court or judge may grant an order that the service be made by the publication of a summons in either of the following cases: * * *The order must direct the publication to be made in some newspaper to be designated as most likely to give notice to the person to be served and for such length of time as may be deemed reasonable, not less than once a week for six weeks. In case of publication the clerk or judge must also direct a copy of the summons and complaint to be forthwith deposited in the postoffice, directed to the person to be served at his place of residence, unless it appears that such residence is neither known to the party making the application nor could with reasonable diligence be ascertained by him.

When publication is ordered, personal service of a copy of the summons and complaint out of the territory is equivalent to publication and deposit in the postoffice." The affidavit on which the order for publication was obtained contained no statement of facts

having any legal tendency to show due diligence on the part of the plaintiff in attempting to find the defendant within the county of Burleigh or the territory of Dakota. On the contrary, the only facts stated in such affidavit tended to show a total want of due diligence and of any good-faith attempt to ascertain his whereabouts or to serve him within the territory. The affidavit was utterly inadequate to give the court jurisdiction to make the order of publication under the rule of Beach v. Beach, 6 Dak. 371, 43 N. W. 701, Simensen v. Simensen, 13 N. D. 305, 100 N. W. 708, and many other authorities. It is apparent that the majority of this court failed to find that the district court of the territory acquired jurisdiction to order the publication of the summons or to enter judgment, as, had it so found it could have put an end to all litigation on the matter by so stating. The rule as established by the cases I have cited and others almost without number is that the affidavit must state facts on which the mind of the court can act, and from which it can properly draw the conclusion that due diligence has been used in an attempt to find the defendant within the jurisdiction of the court, and to make personal service on him. The allegation that due diligence has been used is no more nor less than a statement of a conclusion of law, and furnishes no fact upon which the court can predicate an order of publication. When the affidavit, as in this case, fails to state such facts, the court never acquires jurisdiction to support its order, and all subsequent proceedings are absolutely void. This deficiency is not a defect nor a technicality. The affidavit is totally lacking in substance.

This deficiency goes to the foundation of the power of the court to act at all, and it cannot be cured by a publication as ordered nor by service on the defendant outside of the state, which under the provisions of the Code quoted simply takes the place of, and does away with the necessity of publishing and mailing, the summons. It matters not how many times the defendant may have heard of, or in what manner he may have acquired knowledge of, the attempt to commence such action. The terms of the statute must be strictly complied with. When the court acquires no jurisdiction to make the order, it acquires no jurisdiction to enter judgment, unless the want of jurisdiction over the person of the defendant is cured by his subsequent service within the jurisdiction or by an appearance. In this case no subsequent service was made in the territory, and no appearance was ever entered on behalf of the defendant. No authority

can be found to the effect that the entire failure of the court to acquire jurisdiction is an informality, an irregularity, or mere technicality. I have always supposed, and still assume and assert, that jurisdiction is the first and most essential prerequisite to the validity of any judgment entered by any court.

It is said that the equities are with Campbell. I cannot agree to this proposition. One of the fundamental principles of the jurisprudence of civilized nations is that property shall not be taken ·without due process of law. It is beyond the reach of my imagination to assume that there can be equities greater than the right of a party to his liberty and his property unless deprived thereof by due process of law, and it matters not under what guise it is taken, nor whether it is done by courts, legislatures, or individuals. If it is taken in any other manner or by any other process, the taking is simple confiscation. The sustaining of a proceeding in conflict with this principle is sustaining the right to confiscate property. The fact that the defendant may have had hearsay knowledge, which is all the invalid service amounts to, of the pendency of the action under the statute quoted, does not deprive him of the right to due process, and the equities still remain in the man who holds the legal title to the property of which the plaintiff, with the concurrence of the court, attempts to deprive him in a manner unknown to the law or to recognized methods of procedure. "The right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion." McGehee on Due Process of Law, 79. "If the proceeding is wanting in the elements constituting due process, whatever force and effect the judgment may otherwise have, it cannot bind the defendant. He is not and cannot be treated as a party without a violation of what is regarded as a fundamental rule of natural justice." Lavin v. Emigrant Industrial Savings Bank (C. C.) 18 Blatchf. 11, Fed. 641. "The basic principle of English jurisprudence is that no man shall be deprived of life, liberty, or property without due process of law—without a course of legal proceeding according to those rules and forms which have been established for the protection of private rights. Judicial orders or judgments affecting the life or property of citizens, in the absence of a notice which is in accordance with the proceedings established by the law of the state and also which give a reasonable opportunity to be heard respecting the judgment sought, are violative of the fundamental principles of our laws, and cannot be sustained." In

re Rosser, 101 Fed. 562, 41 C. C. A. 497. "Due Process of law" is equivalent to "law of the land," and means being brought into court to answer according to law. It means that no person shall be deprived by any form of governmental action of either life, liberty, or property, except as a consequence of some judicial proceeding properly and legally conducted. Lowry v. Rainwater, 70 Mo. 152, 55 Am. Rep. 420. Due process of law cannot mean less than a prosecution or suit instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt or determining the title to property. By the term 'due process' is meant that which follows the general rule established in our system of jurisprudence, and it must be pursued in the ordinary mode prescribed by law." Taylor v. Porter, 4 Hill (N. Y.) 140, 40 Am. Dec. 274; Carr v. Brown, 20 R. I. 215, 38 Atl. 9, 38 L. R. A. 294, 78 Am. St. Rep. 855; Risser v. Hoyt, 53 Mich. 185, 18 N. W. 611; Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Marchant v. Pa. R. R. Co., 153 U. S. 380, 14 Sup. Ct. 894, 38 L. Ed. 751.

Let us inquire more minutely into the procedure in this case. On doing so we find that, in addition to the failure to acquire jurisdiction to make the order, no publication was in fact made, and that the service, if one was in fact made (which may be questioned) outside the state, was inadequate to confer jurisdiction on the court to enter the judgment, in the absence of an appearance, even had the court acquired jurisdiction to enter the order. Section 62 of the Code of Civil Procedure of 1877 provides that an action is commenced when the summons is served upon the defendant, and that an attempt attempt must be followed by the first publication or service thereof when the summons is delivered, with the intent that it be actually served, to the sheriff or other officer, with the proviso that such an attempt must be followed by the first publication of service thereof within 60 days. In the case at bar the summons, if served on the defendant as alleged, in the city of Philadelphia, was not served until 77 days had elapsed after its delivery to the sheriff. It follows from this, as we have said, irrespective of the adequacy or inadequacy of the affidavit, that no action was commenced at all. Certainly, if no action was commenced, no judgment possessing any vitality or validity could possibly be entered. The pretended judgment was a mere fiction, a blot upon the record of the court, of no more value legally, and having no more effect in transferring property rights, than a blank sheet of paper. Yet, while it possessed the

form and appearance of a judgment, it might mislead courts, interested parties, and the public. In People v. Greene, 74 Cal. 400, 16 Pac. 197, 5 Am. St. Rep. 448, it is well said that a judgment void upon its face is a dead limb upon the judicial tree which should be lopped off if the power so to do exists. It can bear no fruit to the plaintiff, but is a constant menace to the defendant, and that the court will interfere for its own dignity and the protection of its officers to arrest further action, and that the most effectual method of doing this is by extirpating the judgment itself, by removing a form which is without substance, and that court directed the trial court to set aside a judgment entered 15 years before. Yet it is held by this court that such a judgment is sufficient to create such equities on the side of the judgment creditor that parties and courts must in practice and in fact give it full force and credit as against a direct attack , and that the court which, if it had a right, as held in the majority opinion, to exercise a legal discretion in the matter to purge its records of this fiction, this dead limb upon the judicial tree which is a constant menace to the public and the dignity of the court, wipes out the blot which undoubtedly was inadvertently placed on its records, is guilty of an abuse of discretion.

Assuming at this point that it does lie within the sound legal discretion of the district court whether to purge its record of such a judgment, I find many authorities holding it an abuse of such discretion to deny a motion to vacate a void judgment, but none anywhere squarely holding the lower court guilty of an abuse of legal discretion when it vacates such a judgment. Authorities are to the effect that, in case of doubt as to its validity, the doubt should be resolved in favor of the applicant who seeks its vacation. Watson v. Railway Co., 41 Cal. 17; Dougherty v. Bank, 68 Cal. 275, 9 Pac. 112; Wolff v. Railway Co. 89 Cal. 332, 29 Pac. 825; Pearson v. Fishing Co., 99 Cal. 425, 34 Pac. 76; Condon v. Besse, 86 Ill. 159; Steiner v. Scholl, 163 Pa. 465, 30 Atl. 159; 15 Ency. P. & P. 286, and cases cited. But I think that while many of the authorities holding that it lies within the discretion of the court appear to apply to void judgments, nearly all of them in fact apply to those only which are irregular and not void; that some courts have failed to distinguish between the two; and that the overwhelming weight of authority and the best reasoned cases are to the effect that, in the case of void judgments, the defendant seeks relief, not as a matter of grace or discretion, but as a matter of undeniable right, on the

ground that the court never obtained jurisdiction over him, and has therefore no power to enter judgment against him. Gillette v. Ashton, 55 Minn. 75, 56 N. W. 576; 6 Ency. P. & P. 204. See also Freemon on judgments, Sec. 98 and cases cited in note 7; Huffman v. Huffman, 47 Or. 610, 86 Pac. 593, 114 Am. St. Rep. 943; cases cited in note 99 Am. Dec. 532; Rue v. Quinn, 137 Cal. 651, 66 Pac. 216, 70 Pac. 732; Pettus v. McClannahan, 52 Ala. 55; 17 Am. & Eng. Ency. of L. 825, 842; People v. Mullan, 65 Cal. 396, 4 Pac. 348; cases cited in Freeman on Judgments, 230.

Reference is made to the length of time which has elapsed since the entry of the judgment, and this is given as a reason why the trial court should not have entertained the application. The authorities, however, are practically unanimous that a judgment which is void as shown by the files or records in the case may be vacated at any time, irrespective of the lapse of time. This court has so held. See Skjelbred v. Shafer, 15 N. D. 539, 108 N. W. 487, 125 Am. St. Rep. 614, where it is held that relief from a judgment void for want of service may be had without regard to the date of its entry and without showing the excuses required when jurisdiction had attached. In Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L. R. A. (N. S.) 803, 118 Am. St. Rep. 612, it is held that a judgment shown by the record to be void may be attacked at any time, and it is stated in Mr. Freeman's note in 23 Am. St. Rep. p. 105, and cases cited, and in Flowers v. King, 145 N. C. 234, 58 S. E. 1074, 122 Am. St. Rep. 445, that void judgments may be vacated at any time irrespective of lapse of time, and that they should be set aside on application. To the same effect, see note to 60 Am. St. Rep. 643; White v. Ladd, 41 Or. 324, 68 Pac. 739, 93 Am. St. Rep. 732; 23 Cyc. 910; 15 Ency. P. & P. 266, 438; 7 Am. & Eng. Ency. of Law, 825 b. Mariner v. Town of Waterloo, 75 Wis. 438, 44 N. W. 512, is directly in point. In United States v. Gayle (D. C.) 50 Fed. 169, the federal court on motion vacated a void judgment 20 years after its entry. The vice of the argument of counsel before this court, as well as that of the opinion of the majority, appears to lie in the failure to distinguish between irregular and void judgments. In many cases it is held that courts should vacate such judgments on their own motion. It is true that cases are found where judgments were claimed to be void by reason of fraud or where the proof of their invalidity had to be shown by evidence outside and independent of the record or files which hold that the application must be made

within a reasonable time; as, for instance, where it is alleged that the judgment rests upon a false return of service, and such falsity must be proved by the testimony of the defendant or others. The reason for holding that motions in such cases must be made within a reasonable time are apparent, but have no application in cases like this, where the evidence of the invalidity is wholly contained within the records of the court. Those records and files show no more and no less now than they disclosed the day the judgment was entered, and, so far as proof of the invalidity of the judgment is required, no syllable of evidence is needed to establish it outside those records and files.

It is strenuously contended that Bull is not qualified to attack the judgment in this case by motion. It is undeniable that the general rule is that a motion to vacate must be made by a party to the action, but certain exceptions exist to this general rule. These exceptions are stated by Mr· Freeman in his work on Judgments at section 92, and among these are persons not parties to the action, but who are necessarily affected by the judgment, and who have equities or titles to be protected from its operation. Also an exception is made when the transfer of the title to the property on which the judgment operates as a lien works a change in the parties, in which case the transferee may move to vacate the judgment. See People v. Mullan, 65 Cal. 396, 4 Pac. 348; Coffin v. Bell et al., 22 Nev. 169, 37 Pac. 240, 58 Am. St. Rep. 738; Reed v. Bainbridge, 4 N. J. Law 351; Chappel v. Chappel, 12 N. Y. 215, 64 Am. Dec. 496; 15 Ency. P. & P. 251, notes 4 and 6; Ladd v. Stevenson, 112 N. Y. 325, 19 N. E. 842, 8 Am. St. Rep. 748; 17 Am. & Eng. Ency. of Law 839; Schouweiler et al. v. Allen et al., 17 N. D. 510, 117 N. W. 866; Sache v. Wallace, Supra; Malone v. Big Flat Gravel Min. Co., 93 Cal. 385, 28 Pac. 1063; Forbes v. Hyde, 31 Cal. 342.

I find but two cases holding to the contrary. In Ward v. Clark, 6 Wis. 509, and Packard v. Smith, 9 Wis. 184, it was held that the grantee, being a stranger to the record, could not be heard until he procured a status in court by petition or bill, but in Aetna Ins. Co. v. Aldrich, 38 Wis. 107, this statement of law was materially modified. In any event, the early Wisconsin authorities are not applicable to the case at bar. Here the granting of the order to show cause why the judgment should not be vacated in legal effect made Bull a party to the proceedings. The affidavit submitted in support of the motion to vacate alleged in positive terms that at the time of the

commencement of the foreclosure proceedings February 9, 1885, and until the 10th day of August, 1906, the defendant Coulston was the owner of the land described and that on the 10th day of August, 1906, the said defendant Coulston sold and conveyed the same to Bull, the applicant, and that since said date Bull had been and then was the owner of all said land. These statements were contained in the affidavit on which the court granted the order to show cause why the judgment should not be vacated, and the same affidavit was used on the hearing to sustain Bull's motion. The question of jurisdiction to hear the motion was raised, but, if the court had not acquired jurisdiction on the date the motion was returnable, it acquired it in a manner which it is not necessary to consider. The application was made in the name of Coulston by Bull as his successor in interest in the subject matter, appearing specially, and it is conceded by appellant in his brief that it is immaterial whether Bull made the application in his own name or in the name of Coulston. In any event, it was conclusively shown, so far as these proceedings go, that Bull had acquired all the right, title, and interest in the subject-matter of the controversy formerly possessed by Coulston. No suggestion is offered that the deed to Bull is invalid or failed to convey his rights, provided Coulston possessed any, except as hereinafter noted. Coulston could no longer make the application, because he had ceased to possess any interest in the subject-matter of the controversy. Bull was the proper party to make the application. An almost uniform line of authorities holds that a motion to vacate is the only proper proceeding. The Wisconsin authorities cited in the opinion are not in point. They all relate to judgments entered on a warrant of attorney which released errors and the courts of that state possess supervisory control of such judgments. In McIndoe v. Hazelton, 19 Wis. 567, 88 Am. Dec. 701, the distinction is shown between judgments entered upon a warrant of attorney and other judgments, and in that case it is held that the only remedy of a party seeking to avoid a void judgment is by motion, and that a suit in equity for that purpose cannot be maintained. To the same effect, see Purcell v. Kleaver, 98 Wis. 102, 73 N. W. 322. In Wilkinson v. Rewey, 59 Wis. 554, 18 N. W. 513, it is stated that the Wisconsin doctrine and authorities are that courts will not give relief by suit in equity when a complete remedy at law exists by motion to vacate. To the same effect, see Thomas, Jr. v. West, 59 Wis. 103, 17 N. W. 684; Chip-

man v. Bowman, 14 Cal. 158; Imlay v. Carpentier, 14 Cal. 173; Logan v. Hillegas, 16 Cal. 201; Gibbons v. Scott, 15 Cal. 285; Nevlin v. Murray, 63 N. C. 566, 6 Ency. P. & P. 212, 213. The language of Judge Dodge, quoted from the Purcell case, related to a judgment entered on a warrant of attorney, and its application must be limited to such judgments. In Mariner v. Town of Waterloo, supra, the supreme court of Wisconsin passed upon a judgment void for want of service, and Judge Lyon for the court says: "The town not having appeared generally in the action, a valid service of the summons upon the town clerk as well as the chairman was essential to the jurisdiction of the court to render judgment in the action and was properly vacated. No question of laches can be raised in such case, the former judgment being null and void. No such service having been made, the judgment is absolutely void; it is a mere excresence upon the record which the court should expunge therefrom whenever its attention is called to it." The opinion of Judge Mitchell in Mueller v. Reimer, 46 Minn. 314, 48 N. W. 1120, from which a quotation is given, is very brief, contains no discussion of the subject, and it appears that there was at the same time pending an action between the parties to determine adverse claims to the property involved and including the same issues sought to be determined by the motion, and this was one of the controlling reasons why the court affirmed the district court in its refusal to vacate the judgment. The most that can be said is that this authority has a slight tendency to support the majority opinion, but it stands practically alone. In Dobbins v. McNamara, 113 Ind. 54, 14 N. E. 887, 3 Am. St. Rep. 626, the supreme court of that state held that where defendant was sued in the wrong county, and judgment taken without jurisdiction over his person, because of that fact he had a right to have such judgment vacated, without disclosing his defense, and that a judgment taken under such circumstances must yield to direct attack, however meritorious the cause of action may have been. I find several cases holding that rebutting affidavits should not be received or considered upon any of the collateral questions; that rebutting affidavits should only be received relating to the questions of the validity or invalidity of the judgment. Considerable is said about the court acting as a court of equity in considering an application to vacate a void judgment. The authorities supporting this, so far as I have been able to discover, relate solely to judgments entered on a cognovit or warrant of attorney or motions

based on irregularities, and do not apply to those to vacate void judgments.

The majority opinion seems to take it for granted, and in one place states, that Campbell had been in possession of and paid the taxes on these lands since his attempted foreclosure, and that by vacating the foreclosure decree, this court would prevent Campbell from showing by such facts the invalidity of the deed from Coulston to Bull. I have shown that Bull supported his motion by positive allegations in his affidavit. These allegations were met by no avertments or denials on the part of Campbell, except such as were contained in an instrument verified only on information and belief. In this instrument he alleges on information and belief that Coulston and Bull have not been in possession for many years, and that he Campbell, has been in possession during such time. In the original opinion of this court sustaining the order of vacation, the competency of that evidence was considered, and it was held wholly incompetent and entitled to no weight or consideration. It would seem to be beyond the need of demonstration that an affidavit made by the party who of necessity knows the real facts and who states them only on information and belief should be disregarded by any court of justice. It is hearsay. No prosecution for perjury could be predicated upon it, and it furnishes no evidence of anything. The affiant would not be allowed to testify in any such manner on the stand, and should certainly be equally restricted in an ex parte affidavit where he is subjected to no cross-examination..

. It has been so held by this court. Keppler v. Bank, 8 N. D. 411, 79 N. W. 869; state v. Newton et al., 16 N. D. 151, 112 N. W. 52; City of Atchison et al. v. Bartholow et al., 4 Kan. 124; Thompson v. Higginbotham, 18 Kan. 42. In the Thompson case, supra, Judge Brewer, speaking for the court, held that an affidavit on information and belief proves nothing, and in the Atchison case, where on a hearing on an application for an injunction no affidavits or other evidence except the petition, which was verified on information and belief, was offered, it was held that such verification did not make the petition within the meaning of the law an affidavit of the party, and the court discusses the necessary elements of an affidavit at length. This question would not be entitled to notice except for the assumption which seems to run through the majority opinion that the evidence shows the continuous possession of Campbell, for the reason that in a most exhaustive application for a rehearing, after

the original opinion was filed, no reference was made to the subject of the competency of the so-called affidavit as evidence. It must be conceded that appellant thereby admitted the correctness of the former opinion on this question. I therefore conclude that in legal effect the statements of Bull as to his acquiring the interest of Coulston, and in all other respects, stand admitted by the appellant, and that neither the district court nor this court has any competent evidence before it of the possession by Campbell or of his payment of taxes.

Did the district courts of the state of North Dakota become the successors of the corresponding district courts of the territory of Dakota in actions no longer pending on the admission of the state of North Dakota to the Union? In the original opinion which I wrote in this matter, and which was concurred in by all the judges then participating, we found that it was established in the Merchants' National Bank of Bismarck v. Braithwaite, 7 N. D. 358, 15 N. W 244, 66 Am. St. Rep. 653, that the state courts did become such successors, and that the judgments of the territorial district courts passed under the jurisdiction of the corresponding state district courts, and that, therefore, the district court of the state of North Dakota for Burleigh county has jurisdiction over the records and judgments of the district court of the territory of Dakota for Burleigh county, and many entertain and act upon a motion to vacate a judgment of such territorial court for want of jurisdiction in that court to render the same. Every question which might be raised on appeal from the order of the district court vacating the judgment of the territorial court was briefed and most ably argued by distinguished counsel on the original hearing in this court. After the opinion was filed affirming the order of the district court, new counsel was employed, and an application for rehearing submitted. This application was a new brief of several of the questions previously argued and decided. It was submitted after a most unusual extension of time for that purpose, and two of the judges who concurred in the former decision have as a result changed their views, and now hold that the Braithwaite case is not authority in the present instance. How much their views may be affected by the belief which they entertain that the equities lie with the appellant, rather than with the respondent, I cannot say; but it is apparent that the importance of a correct decision of the question far transcends the interests or equities of any single suitor. From the admission of

North Dakota into the Union it has been universally understood, and both in official and private life, actions of vast numbers of people have been predicated upon the belief that on admission each department of the new state succeeded to the corresponding department of the territory of Dakota and all records were transferred accordingly. It seems to have taken 20 years to discover that this was a mistaken belief.

It has taken ten years since the opinion in the Braithwaite Case, written by the eminent jurist, then Chief Justice of this court, who now appears and contends that that opinion did not mean what it says, to discover the error of this court. We now learn that when he said therein that the state had taken jurisdiction of such judgments and that Congress had assented to its doing so, and that they became as much judgments of the state courts as though originally rendered therein, he was in error, and that this court meant that actions no longer pending were transferred to the state courts for certain purposes only, and that the state courts acquired optional jurisdiction and custody of the judgments of the territorial courts which might be exercised or not at the discretion of the state courts, and that in that class of cases not transferred by the enabling act to federal courts, and in which no demand for a transfer has been made, there is a divided and neither exclusive nor concurrent jurisdiction; that the federal court has jurisdiction over the title, and the state courts over the signature. I am unable to comprehend how a state court can acquire jurisdiction over the judgment of a territorial court one day in the week, and then, without action by any body lose it during the other six days, or how it can be possessed for one purpose and not for all purposes incident to a judgment, whether to enforce or vacate it. Certainly in such case the state court either acquired plenary jurisdiction, or it acquired no jurisdiction. There can be no divided jurisdiction.

The reasoning of Chief Justice Corliss in the Braithwaite Case is strong and convincing, and evidences such painstaking research and is so pertinent to the present case that any attempt on my part to improve upon it would be futile. It is so clear and apropos that I shall quote from it at length.

The quotations made in the majority opinion in the case at bar from that opinion and from the federal authorities are but excerpts, and do not fairly present the decisions. Most of them are state-

ments used in arguendo or presenting some of the reasons under-lying the facts found. The decision in the Braithwaite Case was, broadly stated, that the state courts acquired jurisdiction over the records and judgments of the corresponding territorial courts in actions no longer pending, and that such judgments passed under the jurisdiction of the state courts as fully as though originally entered therein. The opinion in the case at bar does not assume to overrule the Braithwaite Case, but in effect holds that the state courts acquired jurisdiction for certain purposes, and not for others. The argument in the case at bar was that the state court has no jurisdiction or power over judgments of the territorial court of the same county, notwithstanding it finds such judgments in its possession, under its control, turned over to it by the Congress and accepted by the terms of the state constitution. Let us see what Chief Justice Corliss said in the Braithwaite Case: "The question is one of jurisdiction after statehood over the records and judgments obtained in actions brought in a territorial court. The jurisdiction which formally was vested in the territorial court over such records and judgments Congress must have intended to be trans-ferred to some other tribunal. We cannot believe it was the pur-pose of that body to take from a great mass of judgments of the various courts of the different terrieories mentioned in the enabling act all force save that of a conclusive adjudication, and compel the plaintiffs therein to go through the formality of bringing suit upon them in the different courts of the different states to be admitted into the Union, the same as upon a foreign judgment or the judgment of a sister state. The old courts having jurisdiction over cases in which judgment had been entered were to be swept away. New courts were to take their places possessing similar jurisdiction.

These judgments were judgments rendered within the same ter-ritory to be embraced within the new states. Why, under such cir-cumstances, congress should withhold its consent that the judgments should become judgments of the state courts which should succeed to the same general jurisdicton as that of the territorial tribunals in which such judgments were rendered, is inexplicable. That it did not withhold such consent is clear; and, even if we were in doubt on the point, our duty would be plain. It has been settled by an au-thority to which we must defer. In Glaspell v. Railroad Co., 144 U. S. 211, 12 Sup. Ct. 593, 36 L. Ed. 409, the federal Supreme Court

held that as to an action not pending at the time of the admission of North Dakota into the Union, but in which a judgment had been rendered in the territorial district court, there was no jurisdiction whatever in the federal court, but that exclusive jurisdiction of such a case was vested in the state district court, the federal Supreme Court holding that jurisdiction over the judgment in that action rendered by the territorial district court had been by the enabling act transferred to the state court. * * * In construing the enabling act, the court in the Glaspell case said that that act had transferred pending cases, in which the United States was a party, to the federal courts, and pending cases, over which a federal court would have no jurisdiction, to the state courts, and that the jurisdiction over all cases which were no longer pending, and over the records and judgments therein, was vested in the state courts without reference to the question whether such cases must have been brought in a state or federal court, had the territory been a state at the time such actions were commenced. The enabling act by its express provisions and the implications thereof divided all actions, so far as the jurisdiction thereof was concerned, into two great classes—those which were pending and those which were not pending at the time of statehood. It declared that as to pending actions jurisdiction over all actions to which the United States was a party should vest absolutely in the new federal courts created in such new states; that as to all suits over which the federal courts would have had no jurisdiction had the territory been a state at the time they were brought, the jurisdiction thereof should pass to the proper state courts, and that with regard to the middle class of cases—i. e., those in which the state and federal courts would have had concurrent jurisdiction had the territory then been a state—either of the parties to the proceedings might determine whether he would continue the litigation in the state or in the federal court. Until the necessary steps should be taken to transfer such cases, the enabling act contemplated that the proper court for them to be carried on in was the state court, and not the federal court. * * * Considering the provisions of the enabling act, in connection with the failure of Congress to vest jurisdiction over territorial judgments in the federal courts, and the fact that Congress in passing that act must have contemplated that the state Constitution would create state courts having jurisdiction similar to

that possessed by the territorial courts, and that those would be the courts better fitted to enforce judgments throughout the different counties of the state, we must infer an implied assent by Congress that jurisdiction over cases not pending should vest in state courts exclusively. Otherwise we must assume that those cases were to be left without any court possessing jurisdiction over them for any purpose whatever, for it is clear that no jurisdiction over them is vested by the enabling act in the federal courts." Then, referring to section 6 of the schedule of our state Constitution, the learned court proceeded: "This section transferred all records, papers, and proceedings of the territorial district court to the jurisdiction of the state district court without reference to the question whether the case was or was not pending. By this section the people, speaking through their fundamental law, have, with the assent of Congress, vested jurisdiction over the judgments of the territorial district courts in the proper state district court, and the judgments were thereafter as much judgments of the state district court as though they had been rendered by such courts. * * * The opinion of the federal Supreme Court in Benner v. Porter, 9 How. 235 (13 L. Ed. 119), appears to us to support our ruling on this point."

It should be borne in mind that no request has ever been made by either party in the case at bar for the transfer of the proceedings therein to the federal court. It must also be kept in the thought of the reader that there is no scintilla of evidence anywhere in the original record, or in the proceedings now under consideration, showing a diversity of citizenship of the parties. Diversity of citizenship is never presumed for the purpose of giving federal courts jurisdiction. This is attempted to be answered in the majority opinion by the statement that such diversity of citizenship is not controverted. Why should it be controverted when it is nowhere asserted? The federal decisions referred to are in no sense in point to sustain the majority opinion. The federal court was considering acts of Congress, admitting states, which contained no provisions corresponding to sections 22 and 23 of our enabling act. The act admitting Florida made no provisions for the transfer of cases. It simply provided that Florida should be admitted to the Union on an equality with the other states. The facts in the Florida cases were wholly different from those in the case at bar. The opinion in the case of Hunt v. Palao was explained in the Benner case,

where it was held that the objections raised in the Palao case were removed by subsequent acts of Congress, and it was stated that, the territorial courts being the courts of the general government, the records in the custody of their clerks could not legally be given to the possession or custody of others without the assent, express or implied, of Congress, and that, on the admission of a state, the concurrence of both the federal and state governments would seem to be required in the transfer of the records from the old to the new government.

The above paragraph is the one on which appellant relies most strongly and which seems to be most persuasive to the majority of this court, but in the Braithwaite case the language which is used to explain the foregoing paragraph is quoted. It will be observed that it is wholly omitted from the majority opinion in the case at bar. I again quote it because it is directly applicable: "The federal court, however, said: 'We have said that the assent of Congress was essential to the authorized transfer of the records of the territorial courts in suits pending at the time of the change of government to the custody of state tribunals. It is proper to add, to avoid misconstruction, that we do not mean thereby to imply or express any opinion in the question whether or not, without such assent, the state judicatures would acquire jurisdiction. That is altogether a different question, and besides the acts of Congress that have been passed in several instances on the admission of a state providing for the transfer of federal cases to the district court, as in the case of the admission of Florida already referred to, and, saying nothing at the time in reference to those belonging to state authority, may very well imply an assent to the transfer of them by the state to the appropriate tribunal. Even the omission on the part of Congress to interfere at all in the matter may be subject to a like implication.' " This is the phrase referred to in the Braithwaite case, supra, as appearing to support the conclusion there reached.

The view which this court took of the federal authorities is plainly set forth in the extracts from the opinion in the Braithwaite case which I have hertofore quoted, and is in marked contrast with the arguments now advanced and the opinion of the majority expressed through JUDGE FISK, I quote again in reference to section 6 of the Schedule of our Constitution:

"By this section the people, speaking through their fundamental law, have, with the assent of Congress, vested jurisdiction over the judgments of the territorial district courts in the proper state district court, and the judgments were thereafter as much judgments of the state district courts as though they had been rendered by such courts. The opinion of the federal court in Benner v. Porter, 9 How. 235 (13 L. Ed. 119), appears to us to support our ruling on this point." More than 10 years have elapsed since this court held that Congress had assented to the state courts taking jurisdiction of judgments of the territorial courts, and I have never heard of any dissent by Congress from this statement. If lapse of time may affect such assent, as intimated by the federal Supreme Court and held by this court, the reasons for supporting the decision of the Braithwaite case have far more weight now than they had in 1898. In my opinion the conclusions arrived at in the Braithwaite case are unanswerable, and, to overrule that authority, may work serious detriment to the rights of litigants in proceedings which have always been considered as transferred to state courts, and result in such irreparable confusion and injury that the interests of no single litigant should be considered in reaching a determination of the questions involved. Sections 22 and 23 of the enabling act were framed for the express purpose of obviating the defects which had been found in the acts admitting Florida and other states.

While it is not referred to in the majority opinion, it was argued before the court that, by reason of the lapse of 77 days between the order for publication and the alleged service in Philadelphia, no action had been commenced, and that no judgment exists on which the state courts can act in any exercise of jurisdiction. This argument I deem frivolous. The district court found what appears to be, and what is in the form of, a judgment on its records. These records are incumbered by something placed upon them without authority of law, an act of a mere intruder, constituting a false pretense of a record, an imposition upon the public, and misleading to those who have occasion to examine the records. To hold that such a falsehood interpolated into the records of the territorial district court and transferred to the state court must, because found there by the judge of the court, forever remain sacred, would be to hold the courts of this state out to the world as possessing no authority or jurisdiction over their own books of record and make them instru-

ments of fraud ·and imposition, and without authority to apply any direct remedy or to purge their records of such fiction.

It was also contended that because judgment had been entered the action is not pending. This is hardly worthy of notice, but courts have passed upon the meaning of the word "pending" in its applications to actions under such circumstances. It was held in Yorke v. Yorke, 3 N. D. 343, 55 N. W. 1095, that, while the court could entertain a motion affecting the decree, it could not be said in any proper sense that the decree was final. By the Constitution of New York (Const. 1846, art. 14, paragraph 5) it was provided that on the first Monday of July, 1847, jurisdiction of certain suits and proceedings pending in certain courts of the state should become vested in the Supreme Court established by the New Constitution, and in O'Maley v. Reese, 1 Barb. (N. Y.) 643, it was held that by such provision it was intended to cover all cases in which any further judicial action was to be had, such, for instance, as to set aside a judgment for irregularity.

The Court of Appeals of New York in Wegman v. Childs, 41 N. Y. 159, held that under the provisions of the New York Constitution a suit must be regarded as pending whether it had proceeded to final judgment or not, provided any further judicial action might be had in the suit and referred with approval to Sherman v. Felt, 2 N. Y. 186, where it was held that the Supreme Court had jurisdiction under the paragraph of the Constitution referred to, to entertain a motion to set aside a final decree and open the case for hearing upon the merits. In Suydam v. Holden, 4 Abb. Dig. 649, it was held that the same provisions gave the Supreme Court jurisdiction over suits pending in the court of chancery on the 1st day of July, 1847, to vacate an entry of the satisfaction of a final decree of that court entered on its records prior to 1847. Federal Judge Hanford, in United States v. Taylor (C. C.) 44 Fed. 2, in construing the identical provisions of the enabling act now under consideration which admitted North Dakota, Washington, and other territories to the Union, stated his opinion as follows: "In my opinion this act, when all its provisions are considered, manifestly shows that Congress intended to fully protect and preserve not merely the rights of parties in a few select and especially favored ones of the cases commenced in the territorial courts, but every right of every party in every case which at any time has been, or should be, commenced in those courts

during their existence; and the words "all cases, proceedings and matters * * * pending," used in the act, must be construed to embrace all cases, proceedings, and matters initiated in the territorial courts, and in which at the time of the actual transformation of the territorial judicial system into the state and national systems there should be yet any vitality, force or virtue. I have heretofore decided in a case which has proceeded to judgment in a territorial court that the court, which, as to that case, was . successor to the territorial court, should proceed with it, from the precise point to which it has already progressed, exactly as if the case had been commenced and proceeded with to the same point in that court."

For the foregoing reasons, I am of the opinion that the district court of Burleigh county is the successor of the district court of the same county for the territory of Dakota and has jurisdiction over its own records, and may vacate a void judgment found therein transmitted to it by.the territorial court of that county on the admission of this state into the Union, and that the order of the district court of Burleigh county vacating the judgment in the case at bar should be affirmed.

I am authorized to say that CHIEF JUSTICE MORGAN concurs fully in this dissent.